472 So.2d 302 (1985)
Patricia Warlick SPENCER, Plaintiff-Appellant,
v.
Edward A. SPENCER, Defendant-Appellee.
No. 84-488.
Court of Appeal of Louisiana, Third Circuit.
June 26, 1985.
Breazeale, Sachse and Wilson, Robert L. Atkinson, Baton Rouge, for plaintiff-appellant.
*303 Jack Paul Showers, Lafayette, for defendant-appellee.
Before DOMENGEAUX, STOKER and DOUCET, JJ.
STOKER, Judge.
Must an agreement between husband and wife providing for the payment of alimony, entered into prior to divorce, require judicial sanction, approval or confirmation in order to be enforceable? That is the primary substantive question in this appeal. The appeal also presents an evidentiary question concerning proof of the agreement, particularly admission of a copy of the written agreement.
Plaintiff, Patricia Warlick Spencer, brings this action to enforce a written agreement against her ex-husband, Edward A. Spencer, in which he agreed to pay her $200 monthly alimony. The trial court dismissed the action on the grounds that alimony is not enforceable under the law of Louisiana except as the result of an order or judgment of the courts. We reverse and award judgment in the amount of $7,000, plus interest.

FACTS
Patricia Spencer filed this action on June 27, 1983, alleging she and the defendant, Edward Spencer, had entered into a property settlement agreement (hereinafter agreement) on March 18, 1976, in which the defendant agreed to pay her the sum of $200 per month as alimony, commencing on April 1, 1976. A copy of the agreement was attached to and made a part of the petition. Plaintiff further alleged that defendant had breached the agreement by failing to pay the amount owed since March 1, 1981, making the amount in arrears $5,400. Edward Spencer was served through domiciliary service on June 29, 1983.
(One fact in this matter was not addressed by the parties in a clear or positive fashion. We refer to the fact that there is no evidence as to when the plaintiff and defendant were divorced. While no issue was made of the question, there is confusion as to whether the property settlement and alimony agreement was entered into before or after the divorce. The agreement does not refer to any divorce and Mrs. Spencer's petition does not mention the divorce. Counsel for both parties filed briefs in this court asserting that the divorce came after the agreement. However, at the trial counsel for Mrs. Spencer made an opening statement in which he refers to the contract as one made after the divorce. In cross-examination Mr. Spencer answered affirmatively to a question as to whether the agreement was entered into after divorce. No issue has been made concerning this question. For the purposes of resolving this case we will treat the matter as if the agreement was made prior to the divorce. If the agreement was made after the divorce, we feel we would reach the same result, that is, that the agreement is enforceable.)
On July 13, 1983, Edward Spencer filed an exception of subject matter jurisdiction, alleging that the instant proceeding arose by virtue of an alleged judgment from a Mississippi court, and he was answerable only in that jurisdiction. On August 19, 1983, without any further proceedings being had, defendant filed a pleading entitled "Rule for the Elimination of Alimony," in which he alleged a change in circumstances and prayed for judgment eliminating alimony. The rule was set for hearing on October 17, 1983. The record next shows a judgment dated October 6, 1983, dismissing the exception of jurisdiction on defendant's own motion. For reasons not evident in the record, defendant's rule for elimination of alimony was not heard on the date for which it was set.
On October 20, 1983, on plaintiff's motion, the original matter was set for trial for February 24, 1984. Notice of the order setting the matter was served on defendant's counsel. Without defendant ever having filed an answer, the cause was tried and decided on February 24, 1984. Opening remarks by the trial judge indicate both *304 parties filed a pretrial brief, although only defendant's brief is contained in the record.
The first witness was the plaintiff, who was immediately asked to identify the signatures on a two-page document described as a certified copy of the agreement upon which the suit was based (reproduced as Appendix A). After plaintiff identified the signatures, her attorney attempted to introduce the document and was met with objections. First, defendant's attorney objected on the ground of lack of foundation. Without pursuing this objection, defendant's attorney further objected that the document was not a correct copy of a public record. Defendant's attorney pointed out that the document indicated that the signatures of the parties were attested to by a Louisiana notary in Rapides Parish, without witnesses; the document bore a caption reading "Chancery Court for Pearl River County, Mississippi;" and the "True Copy" certification was made by a Mississippi notary, who attested the document was a correct copy of a record in the office of Smith, Smith, Tate & Stewart, Poplarville, Mississippi. Finally, defendant's attorney argued that the language of certification indicated that the original was at a lawyer's office in Mississippi, and thus the copy was not admissible under the best evidence rule.
The trial judge sustained defendant's objections under the best evidence rule but advised plaintiff's attorney that he could elicit from the witness the substance of what she considered to be the terms of the agreement. The plaintiff's attorney then stated he would continue under a proffer, and defendant's attorney requested the opportunity to ask questions about the document. Under cross-examination on the proffer, plaintiff testified that the Louisiana notary was in Alexandria, that she recognized the name of the Mississippi notary as a notary in Poplarville, and that she believed the original of the copied document was on file with the law office identified in the certification.
On direct examination under the proffer, Patricia Spencer stated the document was a true copy, again identified the signatures of the parties and testified she was present when her husband signed the original document. She then testified that the agreement provided for an alimony payment of $200 per month and that she had determined Edward Spencer owed $5,400 as of the date of filing suit. She also testified there had been no payments made since the suit was initiated. Plaintiff was then advised to answer questions by defendant's attorney. Without indicating whether or not the proffer was continued, questions from defendant's attorney established that after the original document was signed, Patricia took the document to her attorney in Mississippi, where, as far as she knew, the original remained. Plaintiff was then excused.
Plaintiff then called Edward Spencer on cross-examination. Spencer testified he and Patricia had been married approximately 18 years and that for a portion of that time, he had served in the Army, reaching the rank of captain before his retirement in 1967. Spencer further testified, without any objection from his counsel, that he and his wife were divorced in Mississippi and, thereafter, he entered into a property settlement agreement that was signed in Rapides Parish, Louisiana. Upon further questioning, Spencer testified he was a resident of Arkansas at the time of the agreement and came down to Alexandria for the signing. Spencer also admitted that he gave the document to Patricia Spencer to take back to her attorney in Mississippi. Spencer testified that at the time he signed, he intended the document to be a full and final settlement of the differences between him and his wife.
Plaintiff's attorney then showed the copied document to Spencer and asked him to identify his signature. Defendant's attorney objected again on the basis of the best evidence rule. The objection was again sustained, but the trial court advised plaintiff's attorney that he could ask his questions in a different manner. Stating he was proceeding under a proffer, plaintiff's attorney elicited the testimony from Spencer *305 that the signature on the document appeared to be his.
Plaintiff immediately rested, and defendant stated he had no evidence to offer. The trial court made the following ruling:
"The court will render judgment in favor of the defendant and against the plaintiff, dismissing her suit on the grounds that the provision in the Property Settlement Agreement whereby defendant agreed to pay alimony to the plaintiff at the rate of two hundred dollars ($200.00) per month, commencing on April 1st, 1976, is unenforceable under the law in the State of Louisiana, for the reason that it is not the result of an order or judgment of the Court. The plaintiff is cast with all costs, and judgment will be signed upon presentation."
Immediately after the trial court ruling, Edward Spencer made a motion to dismiss the previously filed Rule to eliminate alimony. Notice of judgment was sent by the court to defendant's attorney. After trial, plaintiff obtained new counsel and filed this appeal. Defendant has not appealed.

ISSUES
The issues raised on appeal are: (1) whether the trial court erred in excluding the certified copy of the agreement under the best evidence rule; and (2) whether the agreement is enforceable.

BEST EVIDENCE RULE
Plaintiff argues that the trial court erred in excluding the documentary evidence of the agreement because the copy sought to be introduced was certified as a true copy. As we understand it, plaintiff urges that the notarial certification rendered the copy tantamount to an original and, thus, the best evidence rule did not apply. Under the best evidence rule, the originals of written documents must be produced, absent a showing that the originals could not be located following a diligent effort. Wray Williams Display Company, Etc., v. Finley, 391 So.2d 1253 (La.App. 1st Cir.1980).
We find it unnecessary to reach the above argument, however, because we conclude that, in fact, the trial court ultimately did consider the document despite his evidentiary ruling. There is no question that the court dismissed plaintiff's case on the merits and not for any lack of evidence. We must assume the trial judge accepted both the parties' testimony and the copy itself as proof of the agreement and its terms. In light of Edward Spencer's testimony that he did sign an agreement under the precise circumstances described by the plaintiff and his identification of his signature under the proffer, we find the acceptance of such evidence was harmless error and the trial court was correct in reaching the case on the merits. Boagni v. Waterbury, 403 So.2d 856 (La.App. 3d Cir.1981). Cf. Jackson v. Gulf Insurance Company, 250 La. 819, 199 So.2d 886 (1967).

ENFORCEABILITY OF THE AGREEMENT
We now consider the issue of the enforceability of the agreement. The trial court dismissed plaintiff's claim on the basis that alimony can only be enforced pursuant to a court judgment. We disagree.
There are numerous cases in which our courts have considered the enforceability of alimony agreements. Such cases have generally focused on the question of the capacity of the parties to make such a contract prior to divorce. Under former LSA-C.C. articles 1790 and 2446, spouses could not contract except in limited circumstances. Alimony agreements were not included within the exceptions but could be ratified. See Nelson v. Walker, 250 La. 545, 197 So.2d 619 (1967). However, the prohibition against contracts between spouses has now been abolished. In the recent case of Braning v. Braning, 449 So.2d 670 (La. App. 4th Cir.1984), the court stated as follows:
"We find no prohibition in the law, and none has been suggested to us, whereby parties cannot agree on permanent alimony prior to the rendering of the divorce decree. Prior to the amendments by Act *306 627 of 1978 and Act 711 of 1979, La.Civil Code Article 1790 prohibited husband and wife from contracting with each other. However, that prohibition has now been abolished by the above mentioned amendments. Clearly, then, appellant contracted and agreed to pay permanent alimony when, and if the divorce judgment was rendered. He does not deny knowledge of the agreement or the fact that he consented to it. The trial court was correct in ordering that the consent judgment be enforced, and that appellant pay the back alimony due. His (appellant's) proper remedy was to seek a reduction in alimony, which he did and which was denied." (Footnote omitted)
In instances in which parties agree to alimony prior to divorce, the divorce judgment is frequently silent as to alimony. For example, in the case of Monk v. Monk, 376 So.2d 552 (La.App. 3d Cir.1979), we determined the respective rights of the parties arising under a property settlement agreement that had not been incorporated into any judgment. In Monk, the wife obtained a separation judgment that provided for child support. After this judgment, the parties entered into an agreement in which the wife accepted certain property and waived permanent alimony and child support. The wife then obtained a divorce judgment which was silent as to alimony and child support. Some months later, the wife filed a petition for arrearages owed under the separation judgment, as well as future child support and alimony. In that case, we held as follows:
"All that is involved in the instant case is permanent alimony, and we feel that the agreement in question effectively waived Mrs. Monk's right to such alimony. In fact, under recent legislation, such an agreement would not even be a relative nullity which must be subsequently ratified, as was the situation in Nelson v. Walker, supra, because the incapacity to contract under which married persons previously suffered, is no longer present."
* * * * * *
"With reference to child support, neither party contends that the agreement between the parents could forever relieve Mr. Monk of his obligation to support his child. Mr. Monk contends on appeal that the property was given in lieu of monthly payments for the child support arrearages which had accumulated between the rendition of the judgment of child support at the time of the judicial separation on July 30, 1976, and the judgment of divorce on December 13, 1977. Additionally, he contends that the property also counts for some future child support.
"We feel it permissible that, although a husband is required to make child support payments in no manner other than directly to the wife with custody, the wife may enter into an agreement whereby child support payments are made in some other fashion. The contract in question is such an agreement, whereby a portion of property was taken in lieu of cash for alimony arrearages and for some amount of future child support. Hodge v. Hodge, 338 So.2d 161 (La.App. 2nd Cir.1976); Rodriguez v. Rodriguez, 245 So.2d 765 (La.App. 4th Cir.1971)."
Following Monk, we decided the case of King v. King, 390 So.2d 250 (La.App. 3d Cir.1980), where we allowed the wife to collect alimony payments under a property settlement agreement and recognized the action as one for breach of contract. In King the parties obtained a separation judgment that provided for alimony pendente lite. On the day after separation, the parties executed a community property settlement agreement that provided for "$200.00 alimony, both pendente lite and permanent, until such time as [the wife] remarries." Subsequently, the husband obtained a divorce judgment which maintained the alimony "until such further orders of this court." A year after divorce, the husband filed a rule to terminate alimony, which was granted on the basis alimony was no longer necessary.
After payments were terminated, Mrs. King filed an action for breach of contract. The trial court dismissed the action, finding *307 the property agreement was null. We reversed, holding as follows:
"The case before us does not present precisely the same issue dealt with in Monk. Mrs. King did not waive her alimony rights. Yet the contract the Kings entered into purported to affect alimony rights: Not only did the parties seek to ratify the trial court's alimony award; they sought to contractually extend it until such time as Mrs. King remarried, regardless of whether she needed it or not. Thus did Mr. King attempt to bargain away his right, under Civil Code Article 160, to have post-divorce alimony terminated when it was no longer necessary. Since such a bargain is only relatively null, under Nelson v. Walker, Mr. and Mrs. King were free to ratify their agreement after divorce."
* * * * * *
"... The parties intended to signify their approval of the alimony judgment by including it in the community property settlement. However, they intended to affect their respective alimony rights and obligations by providing for the payment of alimony until Mrs. King's remarriage rather than until further orders of the court. They ratified their relatively null contract by adhering to its provisions after divorce. Therefore, Mr. King owes his former wife $200.00 per month until Mrs. King's remarriage, whenever that was or will be."
In Jones v. Jones, 459 So.2d 1200 (La. App. 5th Cir.1984), a recent case virtually identical to King v. King, supra, the court upheld an agreement for alimony and enforced the husband's agreement to pay alimony stating:
"The record supports our conclusion that the agreement states a bargained-for arrangement advantageous to both parties. Mrs. Jones is assured of a set sum of monthly payments, regardless of any change in circumstances which ordinarily reduce or terminate those payments (other than remarriage). Should her income increase or needs decrease, she will not suffer a decrease in payment. On the other hand, Mr. Jones is assured that he will never have to face an increase, in the event of an unfortunate happenstance occurring to Mrs. Jones, such as illness or unemployment. In short, each party received benefits from the arrangement. Such does not change the character of the payments as alimony."
In light of the above cases, we conclude that alimony agreements need not be incorporated into a court judgment and are enforceable according to their own terms or the proven intent of the parties. We find the agreement here no different from that considered in King v. King, supra, and Jones v. Jones, supra. We hold that the agreement should have been enforced.
As noted above the defendant did not answer the plaintiff's petition. Plaintiff alleged that the last payment made by defendant was on March 1, 1981 and that at the time of the filing of the petition (June 27, 1983) the sum of $5,400 was owed. In her testimony Mrs. Spencer testified that Mr. Spencer not only had not paid the $5,400 due at the time of filing suit but had not paid any alimony as of the date of trial on February 24, 1985. Accordingly, Mr. Spencer owed alimony for thirty-five months at the time of trial. His failure to answer the allegations of the suit amounts to an admission that he owed $5,400 at the time of filing suit. LSA-C.C.P. art. 1004. At the trial Mr. Spencer did not deny or controvert the testimonial evidence given by Mrs. Spencer that he had paid nothing since the filing of suit. Accordingly, Mr. Spencer owed alimony for thirty-five months at the time of trial at $200 per month, which is a total of $7,000.
For the foregoing reasons, the judgment of the trial court is reversed. It is now, therefore, ordered, adjudged and decreed that there be judgment herein in favor of plaintiff and against defendant in the sum *308 of $7,000, together with legal interest on each installment past due from its due date. All costs of this proceeding, both at the trial level and on this appeal, are assessed to defendant.
REVERSED AND RENDERED.
 APPENDIX A
 IN THE CHANCERY COURT OF PEARL RIVER COUNTY, MISSISSIPPI
PATRICIA WARLICK SPENCER COMPLAINANT
VERSUS NO. 14,174
EDWARD A. SPENCER DEFENDANT
 PROPERTY SETTLEMENT AGREEMENT
 This agreement made and entered into upon this the
 18 day of March, A. D., 1976, by and between PATRICIA
WARLICK SPENCER and EDWARD A. SPENCER,
 WITNESSETH:
 In consideration of the mutual covenants hereinafter
contained, and the equitable divisions of properties accumulated
during the marriage of the parties, and in order that
a final property settlement may be entered into in the above
styled and numbered cause, the parties agree, each with the
other, as follows:
 1. That Patricia Warlick Spencer shall have, and
does hereby have, exclusive ownership of all jointly owned
properties; further, that Edward A. Spencer has concurrently
herewith signed, executed and delivered unto Patricia Warlick
Spencer a quitclaim deed conveying his interest in the dwelling
house which was the home of this marriage.
 2. That Patricia Warlick Spencer shall receive the
sum of $200.00 per month alimony from Edward A. Spencer, commencing
upon April 1, 1976.
*309
 3. That no further demand shall be made by Patricia
Warlick Spencer against Edward A. Spencer, either in the above
 styled and numbered cause or otherwise, and this property
 settlement agreement shall fully, finally and forever settle
 all demands that each party has against the other party of
 whatsoever kind or nature, provided only that this agreement
 is conditioned upon the timely payment of the hereinabove
 mentioned alimony.
 WITNESS our signatures on this the 18 day of
March, A. D., 1976.
 
 
STATE OF LOUISIANA 
PARISH OF 
 Personally appeared before me, the undersigned
authority in and for the jurisdiction aforesaid, the within
named PATRICIA WARLICK SPENCER and EDWARD A. SPENCER, who
acknowledged to me that they signed, executed and delivered
the above and foregoing instrument of writing on the day, in
the year, and for the purposes therein contained.
 GIVEN under my hand and official seal of office
on this the 18 day of March, A. D., 1976.
 
*310
My Commission Expires:
I certify that this is a true and correct copy of record in the
office of SMITH, SMITH, TATE & STUART, Poplarville, Mississippi.
 
My Commission Expires: