493 So.2d 679 (1986)
John William KING, Sr., Plaintiff-Appellant,
v.
Cynthia Gail Stockstill KING, Defendant-Appellee.
No. 17986-CA.
Court of Appeal of Louisiana, Second Circuit.
August 20, 1986.
Rehearing Denied September 18, 1986.
Writ Denied November 21, 1986.
*680 Loridans & Loridans by Henri Loridans, Bossier City, for plaintiff-appellant.
Love, Rigby, Dehan, Love & McDaniel by Kenneth Rigby, Shreveport, for defendant-appellee.
Before MARVIN, JASPER E. JONES, FRED W. JONES, Jr., JJ.
JASPER E. JONES, Judge.
This is an appeal of a judgment rejecting a claim of lesion asserted against a voluntary community property agreement. The plaintiff-appellant is John William King, Sr. The defendant-appellee is Cynthia Stockstill King.
We affirm.

FACTS
The plaintiff's marriage to the defendant was terminated by a judgment of divorce rendered on November 17, 1983. On that date the parties entered into a voluntary community property settlement agreement. *681 No values were assigned to any of the properties included in the partition.
On May 4, 1984, the plaintiff filed suit to rescind the agreement on the basis of lesion beyond one-fourth. As a result of stipulations the only values at issue pertained to the plaintiff's undivided one-eighth interest in 1,044 acres of timberland in Claiborne Parish belonging to his separate estate and the value of the interest in his American Airlines Retirement Plan which plaintiff had acquired as an American Airline pilot for 17.23 years of the marriage. This plan would mature at plaintiff's normal retirement on December 1, 1997, which is his sixtieth birthday.
By written reasons dated October 14, 1985, the trial court rejected plaintiff's demands holding that while there was some discrepancy in the value of the property received by the parties, the plaintiff had not established his claim by clear and convincing evidence.[1] The plaintiff has appealed and the defendant has neither appealed nor answered the appeal. The sole assignment of error is that the trial judge erred when he found the plaintiff failed to meet the required burden of proof. The assignment of error presents the following issues:
(1) Did the plaintiff prove the valuation of his undivided one-eighth interest in 1,044 acres of timberland in Claiborne Parish?
(2) Did the plaintiff sufficiently establish the value of the American Airlines Retirement Plan?
(3) Did plaintiff prove lesion even though he failed to prove the value of the 1,044 acres and in spite of the dispute over the value of the American Airlines Retirement Plan?
(4) Can the waiver or reduction of rights to alimony be the subject of a community property settlement, and if so, must the value of the benefit received by virtue of the waiver of alimony be proven as an element of the claim of lesion?

LAW ON LESION IN VOLUNTARY COMMUNITY PROPERTY SETTLEMENT AGREEMENTS
The law recognizes a voluntary community property settlement agreement may be set aside for lesion beyond one-fourth. The party claiming this remedy has the burden of proving, by clear and convincing evidence, the fair market value of the property in the state it existed at the time of the contract and speculative values will not be considered. The proper method of establishing lesion beyond one-fourth is two-fold: (1) First, the community property's true value (net value) must be ascertained; (2) Second, it must then be determined from the property acquired whether a party received value less than ¾ of ½ share of the property partition's true value. Cowling v. Cowling, 486 So.2d 1060 (La. App. 2d Cir.1986); Beatty v. Vining, 147 So.2d 37 (La.App. 2d Cir.1962); LSA-C.C. arts. 1397, 1398, 1860, 1861.[2]
*682 The most reliable and approved method of determining the fair market value of immovable property is to consider comparable sales and to adjust them to the subject property for differences in size, location, financing, highest and best use and other relevant characteristics. State Department Of Highways v. Kornman, 336 So.2d 220 (La.App. 1st Cir.1976). See also Mullins v. Page, 457 So.2d 64 (La.App. 2d Cir.1984), writ den., 459 So.2d 538 (La. 1984).
The right of a spouse to receive benefits payable by a retirement plan is, to the extent attributable to employment during the community, an asset of the community. The spouse's interest is not limited to the cash withdrawal value at the date of dissolution of the community. Even though such a retirement plan may not have an immediate redeemable cash value, a spouse is entitled to a declaration of the interest attributed to the community if and when these benefits become due in the future. A spouse is also entitled to have recognized his or her one-half interest in this community asset. Sims v. Sims, 358 So.2d 919 (La.1978).
Alimony after divorce can be made the subject of a contract and may be included as a part of a community partition wherein it can be waived or otherwise provided for as consideration for property received in the partition. Nelson v. Walker, 250 La. 545, 197 So.2d 619 (1967); Monk v. Monk, 376 So.2d 552 (La.App. 3d Cir.1979); King v. King, 390 So.2d 250 (La.App. 2d Cir.1980); Jones v. Jones, 459 So.2d 1200 (La.App. 5th Cir.1984); Spencer v. Spencer, 472 So.2d 302 (La.App. 3d Cir.1985); Cunningham v. Cunningham, 448 So.2d 910 (La.App. 3d Cir.1984). Such alimony agreements need not be incorporated in a court judgment and are enforceable according to their own terms or the proven intent of the parties. Spencer v. Spencer, supra. A provision in a community partition which reduces the husband's child support obligation is to be considered as a benefit received by the husband to the extent of the reduction. The value of this benefit is to be added to the value of the other assets received by the husband for the purpose of considering the husband's claim to set aside the partition on the grounds of lesion. Steadman v. Steadman, 423 So.2d 710 (La. App. 3d Cir.1983), writ den., 429 So.2d 158 (La.1983).
Issue No. 1Did the plaintiff establish the value of the undivided 1/8 interest in the Claiborne Parish property?
The plaintiff argues his expert witness provided clear and convincing evidence that the undivided 1/8 interest in the Claiborne Parish 1,044 acre tract was valued at $945 per acre as of the date of the community property agreement. In the alternative he asserts that an act of donation executed subsequent to the agreement, and involving an unrelated undivided 1/7 interest in 140 acres of the Claiborne Parish property, proves that the interest at issue is worth at least $500 per acre.
The record establishes the plaintiff acquired as his separate property an undivided ¼ interest in the Claiborne Parish property by an act of donation dated February 6, 1965. This property was included in the community property agreement dated November 17, 1983, and each party was allocated an undivided one-eighth interest. The trial court accepted the plaintiff's witness, Bryant Lewis, as an expert in the evaluation of raw land in Claiborne Parish. The witness testified it was his opinion the property interest at issue had a value of $945 per acre as of the date of the community property agreement. He admitted this evaluation of the undivided interest did take into consideration a $30 per acre discount for the legal expenses that would be incurred if a partition suit was brought by any of the co-owners. Upon cross examination *683 the expert acknowledged that his valuation was based on his personal familiarity with comparable sales and that he did not check such market data in the courthouse records. He also admitted that a full reservation of mineral rights is a factor that would decrease the value of such property interest and that he was unaware plaintiff's interest was subject to a full mineral reservation at the time of the property agreement. He responded by estimating that such a reservation would reduce his appraised value by $150 per acre.
The record also reveals an act of donation was executed on June 5, 1984, where the plaintiff acquired an additional undivided 1/7 interest in 140/1044 acres of the Claiborne Parish property. This act of donation contained a usufruct for life as its only restriction and contained a clause where the parties stipulated that 140/1044 acre of property had a value of $70,000.
We are compelled to conclude that the plaintiff has not established by clear and convincing evidence the fair market value of the undivided 1/8 interest in the Claiborne Parish property at the time of the community property agreement. The value given by Bryant Lewis is speculative at best as he did not investigate clerk of court conveyance records to secure evidence of sales of comparable timberland. He provided no facts to show the sales he did employ were reliable indicators of the fair market value of the property interest at issue. Cf., Mullins v. Page, supra; State Department Of Highways v. Kornman, supra. He was unaware of the mineral restrictions on the property interest at the time of the property agreement and provided no facts to support his opinion that such a burden would require a discount of only $150 per acre. He also acknowledged that a co-owner's lack of bargaining power would also decrease the value of the property interest but gave no discount value that would represent the plaintiff's position relative to the other co-owners. The plaintiff cited no express authority for discounting an undivided interest in land by the estimated legal expenses in a partition suit and offered no explanation why other related expenses of such litigation would not also be included. The act of donation executed on June 5, 1984, does not support the plaintiff's estimation of a minimum fair market value of his property interest of $500 per acre as it was executed over seven months after the property agreement was confected and contained no similar full mineral reservation. In any event, the stipulation as to the value of the donated interest cannot, in and of itself, provide the basis of establishing the fair market value of the property interest at issue as of the date of the property agreement.
Issue No. 2Did the plaintiff prove the value of the American Airlines Retirement Plan?
The plaintiff argues that he proved the value of the retirement plan to be $85,000 at the time of the property agreement.
The record reveals that at the time of the community property settlement agreement the plaintiff was a participating member of an American Airlines Retirement Plan. He had earned approximately 17.25 years of credited service, all of which was attributable to the former community regime. Plaintiff had a retirement date of December 1, 1997, when he would be 60 years of age. The record also establishes that the trial court accepted the plaintiff's witness, Percy Alexander, Jr., as an expert in the evaluation of securities and pension plans. This witness testified that the retirement plan had a total value of $85,000, as of the date of the property agreement. He admitted this estimation represented the liquidated value of the plan, not its fair market value, as the IRS restrictions on its premature transfer would result in "nobody" qualifying as a willing buyer. This was the value he put on the plan as of the date of the agreement if there were no restrictions in the plan against selling it and if a willing buyer could be found. The witness admitted he was unfamiliar with the formula for evaluating a retirement plan, as approved by the Louisiana Supreme Court in *684 Sims v. Sims, supra, and that he did not attempt to calculate a present value of the plaintiff's retirement plan as of the date of the partition based upon what it would be worth at the time the plaintiff retired.
The record reflects that the trial court accepted the defendant's witness, Dr. James Johnson, as an expert in the determination of present values of future annuities. This witness testified his ultimate conclusion of the value of the plaintiff's retirement plan, subject to the partition, was $224,476.00. The witness also used the retirement plan summary sheet reflecting that upon the plaintiff's retirement at 60 years of age, he will have earned 31.17 years of creditable service. Of this amount, 17.25 years should be credited to the former community. The value of the plaintiff's ½ interest in the retirement plan is $112,238.00 as of the date of the partition. The witness testified he was familiar with the Sims formula on retirement plan benefits in community partitions and considered it in making his evaluation.
We conclude the plaintiff has not established the value of the retirement plan as of the date of partition by clear and convincing evidence. The rationale used by his expert witness does not include the recognition that the value of the interest must include consideration of its value as of the date of plaintiff's retirement and this quality must be considered, even though the interest is limited by the number of years that contributions were made during the marriage. This consideration is required by Sims v. Sims, supra. The method employed by the defendant's expert is more in accord with the guidance of Sims v. Sims, supra, and represents a more sound evaluation of the present value of the retirement plan at the time of the property agreement.
The plaintiff, in a reply brief filed here, contends that omitting from the calculated total of the property partitioned his separate property which he conveyed to the defendant, which included the 1/8 interest in the 1,044 acre tract and ½ interest in the home[3] and then accepting the defendant's expert's evaluation of the retirement system, it becomes apparent the transaction still must be set aside on the grounds of lesion by ¼. The plaintiff uses in these calculations figures that are not in dispute because he omits the value of the 1/8 interest in the 1,044 acres and accepts the defendant's evaluation of the retirement plan. All other values shown, along with the property received by the defendant in the partition and debts assumed by him, are not subject to dispute. The plaintiff's calculations are set forth as follows:

TOTAL COMMUNITY ASSETS
AA Retirement Plan $224,476.00
Undivided 1/2 int. in home 57,500.00
Contents of home 18,245.00
Shares, H & H Investments 977.50
Tidecraft Barge 3,594.00
Golf Cart 1,600.00
Mr. King's household goods 1,340.00
IRA 2,110.40
Personal loan due community 5,000.00
1978 GMC Pickup 4,995.00
1984 Buick 6,600.00
Balance, Homer Nat. Bank 600.00
Lake House 50,000.00
 ___________
 TOTAL ................ $377,037.99
COMMUNITY DEBTS ASSUMED
 BY JOHN KING $ 44,135.88
COMMUNITY ASSETS RECEIVED BY JOHN
 KING
1/2 AA Retirement $112,238.00
Other assets 69,916.99
 ___________
 TOTAL ..................... $182,154.99
PLAINTIFF'S CALCULATION OF LESION
Mr. King's share (or 1/2 community
 assets having value of $377,037.99)
 $188,518.99
3/4 of Mr. King's share .............. $141,389.24
Total Community Assets
 received by Mr. King $182,154.99
Less Community debts
 assumed - 44,135.88
 ____________
 NET ASSETS RECEIVED ...... $138,019.11
 ___________
Lesionary by ....................... $ 3,370.13

The plaintiff's lesion calculation, nor any attempt to amend it by considering defendant's receipt in the partition of plaintiff's ½ separate interest in the family home which *685 has an undisputed value of $57,500, cannot take into consideration the value of alimony concessions made by the defendant as part of the community property agreement. The value of the alimony concessions were not proven at trial.
The following provisions quoted from the community property settlement unequivocably reflect that part of the consideration received by plaintiff for the plaintiff's interest in the community property and his separate property conveyed to defendant was the benefits he received from the reduced and waived alimony rights of the defendant.
"IV. WIFE takes as her share and in full settlement of the community and obligations of support, and HUSBAND, herewith does by these presents TRANSFER, CONVEY, AND DELIVER UNTO WIFE, with full guarantee of title, and with complete transfer and subrogation of all rights and actions of warranty against all former proprietors of the property herein conveyed, together with all rights of prescription, all of husband's undivided interest of every nature and kind in and to the following property:..." [emphasis added]
. . . . .
"VIII. The parties have further agreed as a part of the settlement of community and as an additional consideration to the filing and granting of the divorce, which cause of action is solely with Cynthia Stockstill King, that the wife shall receive monthly the sum of $2,100.00 until the children reach age eighteen (18) or conclude their education, whichever occurs last. This monthly payment is listed as # 7 in paragraph IV above. It is agreed and understood by both parties that the monthly payments at that time shall be reduced to $1,800.00 which shall continue during the lifetime of John William King, Sr. until his retirement takes affect and monthly payments are made from the retirement plan. It is understood and agreed that the remarriage of Cynthia Stockstill King shall in no way affect the monthly payments. It is also agreed that the monthly amount will be subject to reduction according to the means of J.W. King, Sr. in the event of a medical disability barring alcoholism. In partial consideration therefore, Cynthia Stockstill King waives her right and agreed not to seek alimony in greater amounts in excess of this agreement." [emphasis added]
. . . . .
"X. It is the express intent of the parties to acknowledge the equal ownership in the American Airlines Retirement Plan in the name of John William King, employee number 49959. Whenever, upon the retirement of John William King, Sr., Cynthia Stockstill King shall receive one-half (½) of the retirement benefits accrued up to the effective date of the divorce as they are paid. It is understood that at this time John William King does convey, transfer, and deliver to Cynthia Stockstill King an undivided one-half (½) interest in the retirement benefits and acknowledges her ownership interest up to the date of the divorce. As a further consideration of this agreement the monthly payments due by John William King, Sr. shall automatically terminate upon the activation of the retirement benefits by the actual retirement of John William King, Sr. and being substituted thereby. The formula for calculation of the portion of monthly retirement benefits to be paid to CYNTHIA STOCKSTILL KING shall be one-half (½) time the fraction 17.25 as numerator divided by the total number of years worked toward retirement or denominator. It is, however, provided, that in the event of medical disability barring alcoholism the monthly payments will be changed according to the means of John William King, Sr. to pay monthly amounts.
Both parties agree that they have received in this Community Property Settlement property approximately equal in value and each agrees that his or her interest in the community property is *686 fully satisfied. The parties further agree that each has received adequate consideration for his or her conveyances and is satisfied with this agreement, that it has been entered into for the mutual benefits to be derived from settlement and comprimise (sic) weighted against the cost of losing and the hope of winning in settlement litigation." [emphasis added]
A very substantial benefit which the plaintiff received in this settlement was the reduced and eliminated alimony rights surrendered by the defendant. She agreed that she would never seek an increase in her alimony above the amount provided for in the agreement and further agreed the alimony would forever terminate upon plaintiff's retirement. After plaintiff's retirement she would have no further claim to alimony. She would then be relegated to her portion of the retirement benefits which she received under the community property law at the time of the dissolution of the community. The rights to alimony surrendered by the defendant in this partition agreement are valuable benefits received by the plaintiff. In order to determine if the agreement was lesionary the value of the alimony rights contractually terminated must be first determined and this value added to the property received by the plaintiff in the partition so it can then be determined if the plaintiff in fact received less than ¾ of ½ of the property included within the partition. The waiver of the alimony by the plaintiff has an equalizing effect upon the amount of value she received in property from the partition agreement. Because the plaintiff failed to establish the value of the benefits which he received by virtue of the termination of defendant's alimony rights and because he failed to establish the value of the 1/8 interest received by the defendant in the 1,044 acre tract of land, the record fully supports the trial court's finding that plaintiff failed to establish lesion.
AFFIRMED at plaintiff's cost.
NOTES
[1] We note that the trial court incorrectly referred to the difference in value received by the parties rather than comparing the value the property plaintiff actually received to ¾ of his ½ share of the property partitioned. See Cowling v. Cowling, infra.
[2] As the facts in this case occurred prior to January 1, 1985, the effective date of the revision to LSA-C.C. arts. 1752-2291, the relevant substantive law is as follows:

Art. 1397. Causes for rescission
Partitions made, even with persons of full age, may be rescinded, like other covenants, for radical vices, such as violence, fraud or error.
Art. 1398. Lesion beyond one-fourth
They may even be rescinded, on account of lesion; and, as equality is the base of partitions, it suffices to cause the rescission, that such lesion be of more than one-fourth part of the true value of the property.
Art. 1860. Lesion, definition and basis for relief
Lesion is the injury suffered by one who does not receive a full equivalent for what he gives in a commutative contract. The remedy given for this injury, is founded on its being the effect of implied error or imposition; for, in every commutative contract, equivalents are supposed to be given and received.
Art. 1861. Scope of relief for person of full age
The law, however, will not release a person of full age, and who is under no incapacity, against the effect of his voluntary contracts, on account of such implied error or imposition, except in two following cases:
(1) In partition where there is a difference in the value of the portions to more than the amount of one-fourth to the prejudice of one or [of] the parties: ... [emphasis added]
[3] There is no dispute that the value of the home is $115,000. The ½ interest that belonged to plaintiff's separate estate is therefore valued at $57,500.