SEXTON, Judge.
Plaintiff-Appellant, James A. Coffey, is appealing the trial court judgment denying him the right to recover eleven years’ worth of alimony payments made to his former wife under the theory of payment of a thing not due. For the reasons hereinafter stated, we affirm in part and reverse in part.
Plaintiff, James A. Coffey, and defendant, Fleta Faye Coffey, were married in 1947. After being physically separated for several months due to Mr. Coffey’s alleged adultery, Mrs. Coffey filed suit for divorce on grounds of adultery on April 24, 1972. The petition for divorce included a rule seeking alimony in the sum of $250 per month. Pursuant to this rule, a hearing was scheduled and judgment was rendered on May 11, 1972, making the rule absolute and ordering Mr. Coffey to pay the sum of $250 per month to Mrs. Coffey (as well as $50 per month per child in child support which is not at issue here). Shortly there *203 after, on May 24, 1972, Mrs. Coffey obtained a divorce on the grounds of adultery by default.
Mr. Coffey continued to pay the $250 per month to Mrs. Coffey for a period of eleven years. In 1983, Mr. Coffey went to see his attorney to inquire about having the alimony payments terminated because of his alleged inability to pay. Following discussions with counsel, Mr. Coffey discovered that the divorce decree was silent with regard to alimony and child support.
Mr. Coffey now seeks to recover these alimony payments made from July 1972 through April 1983, a total of $32,500, under the theory of payment of a thing not due. He claims that his obligation to pay Mrs. Coffey alimony terminated because the May 24, 1972, judgment of divorce was silent as to an award of permanent alimony.
The trial court, h a judgment of December 19, 1988, found that before appearing at the hearing on the rule the parties orally agreed that Mr. Coffey would pay Mrs. Coffey $250 alimony per month for an indefinite period of time. In so finding, the trial court noted that Mr. Coffey had been paying Mrs. Coffey’s household expenses in excess of $250 a month before she filed her petition and also noted that it was only when Mr. Coffey’s attorney called his attention to the fact that the divorce judgment was silent with regard to alimony did Mr. Coffey claim he had paid these funds by mistake.
We decline to consider whether the instant circumstances will support the trial court’s conclusion that the parties entered into an oral contract for the payment of alimony.[1] We deem it preferable to address this issue in the context of the fulfillment of a natural obligation.
Mr. Coffey asserts that he was under no obligation to pay alimony because of the silence of the divorce judgment with regard to alimony. Mr. Coffey is correct that the divorce judgment terminated any alimony pendente lite that he owed as a matter of law. Lewis v. Lewis, 404 So.2d 1230 (La.1981). However, the granting of the judgment of divorce does not cut off the right to alimony after a divorce to a needy spouse who has not been at fault. LSA-C.C.Art. 160; Lewis v. Lewis, supra.
With regard to Mrs. Coffey’s right to alimony, the record is clear that it was Mr. Coffey who was at fault in the breakup of the marriage, not Mrs. Coffey. The record reveals that when Mrs. Coffey entered the hospital in September of 1971 for surgery, Mr. Coffey moved his long-standing girlfriend into the matrimonial home where the two lived as husband and wife. As a result, Mrs. Coffey was forced upon her discharge from the hospital to move into another house that the parties owned.[2]
The record also shows that Mrs. Coffey was in necessitous circumstances at the time of the divorce judgment. During the marriage, and also during the six months the Coffeys were living separate and apart before Mrs. Coffey filed suit for divorce, Mrs. Coffey helped Mr. Coffey in the office of the business that they owned, apparently receiving no salary as such. During the time the parties lived separate and apart, Mr. Coffey paid her in excess of $250 per *204 month by making payments for her rent, utilities, food, etc. In the property settlement which occurred sometime after the divorce, Mrs. Coffey received only a rent house that the couple owned and the equity in the house in which she was living. Mr. Coffey received the business and all the debts of the community. It is clear that this minimal sum of $250 was necessary for Mrs. Coffey’s basic sustenance.
In sum to this point, we have concluded that because the divorce judgment failed to mention alimony, the earlier court award of alimony is judicially unenforceable. We have also determined that Mrs. Coffey was clearly entitled to alimony at that time.
But the issue is not the enforceability of the alimony judgment on rule, but whether Mr. Coffey may be successful in this effort to recover the alimony which he has previously paid undei his right to recover a thing not due. Mrs. Coffey contends that Mr. Coffey’s payments were pursuant to a natural obligation and therefore may not be recovered.
Indeed, the Civil Code treats the issue in two separate articles. LSA-C.C. Art. 2303 provides the following with regard to the right to recover a thing not due:
Art. 2303. Payment made on natural obligation
To acquire this right, it is necessary that the thing paid be not due in any manner, either civilly or naturally. A natural obligation to pay will be sufficient to prevent the recovery.
Further, former LSA-C.C. Art. 1759(1) in effect at the time of this divorce, provided “no suit will lie to recover what has been paid, or given in compliance with a natural obligation.”[3]
Accordingly, the seminal and difficult question in the instant litigation is whether the alimentary payments at issue were in furtherance of a natural obligation. Former LSA-C.C. Art. 1756 defined an obligation as being “synonymous with duty.” In defining natural obligations, former LSA-C.C. 1757 said that a natural obligation “cannot be enforced by action” but was “binding on the party who makes it, in conscience and according to natural justice.”
Mr. Coffey’s obvious contention is that he has not made an obligation in the sense of former LSA-C.C. Art. 1757 but that he simply agreed to a judgment of pendente lite alimony of $250 which abated upon the failure to carry that agreement forward into the final judgment of divorce. Thus, his most telling point is that he did not make an agreement to pay alimony indefinitely but simply agreed to to a judgment to pay $250 as alimony. In other words, his argument is that he has not done something affirmatively in recognition of an obligation (for example, a debtor paying a known discharged or prescribed debt), but was simply responding to a judgment that contained a defect of which he was unaware.[4]
We think this position does not avail Mr. Coffey. Current LSA-C.C. Art. 1760 provides that a natural obligation arises from “circumstances in which the law implies a particular moral duty to render a performance.” [Emphasis ours.] Comment (a) thereunder indicates that while this article does not reproduce the substance of its source, C.C. Art. 1757, it does not change the law. Comment (e) to the current C.C. Art. 1760 states:
(e) The expression “binding ... (in) conscience and according to natural justice,” has been eliminated because of its strong philosophical overtones and replaced by the concept of legally recognized moral duty, which reflects the *205 same idea in a more technical and practical way, and which is in keeping with modern doctrine. See Planiol, “Assimilation progressive de l’obligation naturelle et du devoir morale,” 42 Revue critique de jurisprudence 157 (1913); Ripert, La regie morale dans les obligations civiles 186-395 (4th ed. 1949); 1 Litvinoff, Obligations 564-568 (1969).
One author’s discussion of the fashion in which the Louisiana Civil Code accepted Pothier’s theory of obligations (while adding its own variations) is helpful.
The natural obligation requires more than a moral duty. To be given effect, the obligation must be binding not only “in conscience” (dans le for de la conscience) but “according to natural justice.” We are referred to the standard of equity, sanctioned by Article 21 [“... To decide equitably, an appeal is to be made to natural law and reason ...” Art. 21, La.Civil Codo of 1870. Cf. Franklin, Equity in Louisiana: The Role of Article 21, 9 Tulane L.Rev. 485 (1935) ],[5] rather than abandoned to the vagaries of the individual who might seek to declare the existence of a natural obligation where there is no more than a duty of charity or gratitude. The civil obligation is a legal tie, while the natural obligation is a sub-legal tie, but a tie nevertheless. The act of will which gives effect to a natural obligation is conceived of, not as a gratuitous disposition of property, but as a phase of an onerous transaction.
Martin, Natural Obligations, 15 Tul.L. Rev. 497, 506 (1941).
Perhaps in the terms of the foregoing author, the instant obligation can be seen as involving the equity aspects of LSA-C.C. Art. 21, being more than a duty of charity which, while not rising to the level of a “legal tie,” is nevertheless a “sub-legal tie.”
The instant circumstances might be likened to Commonwealth Finance Company v. Livingston, 12 So.2d 44 (La.App.Orl.Cir.1943), where the plaintiff sought to recover the unpaid balance due on a promissory note. The defendant reconvened for all that had been paid to that point asserting usurious interest. While the court found a usurious obligation, it nevertheless found that a natural obligation existed to the extent the plaintiff had been paid and allowed plaintiff to keep that sum because it was less than the principal which had been borrowed. In so doing, the court took note of Rosenda v. Zabriskie, 4 Rob. 493 (1843); and Perrillat v. Puech, 2 La. 428 (1831), two cases that determined that payments made on an obligation with a usurious interest rate amounted to the fulfillment of a natural obligation and could not be recovered.
Thus, the debtor in Commonwealth Finance Company, like the instant alimentary debtor, did not affirmatively pay an obligation he knew to be civilly unenforceable (such as our previous example of payments on a knowingly discharged or prescribed debt) due to a feeling that it was something he should do in conscience; but rather it was an obligation in the terms of former C.C. 1757 that was binding on his conscience or, in the terms of the current Art. 1760, was one where the law implied a moral duty to render a performance.
Thus, considering the phraseology of the old and new articles on natural obligations, the comments thereto, Commonwealth Finance Company v. Livingston, supra, and its antecedents, and the aforementioned scholarly comment, we are of the view that Mr. Coffey’s payments to Mrs. Coffey, while not in furtherance of a valid alimony judgment, were, under the instant circumstances, given in compliance with a natural obligation and are not recoverable. Former LSA-C.C. Art. 1759(1) and LSA-C.C. Art. 2303.
Inherent in our determination is the idea that the concept of a natural obligatiqn is basically unchanged with the advent of the new obligations articles which were effective January 1, 1985. However, we should add that former LSA-C.C. 1758 provides a further basis for our conclusion.
*206 Former LSA-C.C. 1758 reads in pertinent part:
Art. 1758 Natural obligations are of four kinds:
1. Such obligations as the law has rendered invalid for the want of certain forms or for some reason of general policy, but which are not in themselves immoral or unjust.
[[Image here]]
Thus, it can be contended that the instant circumstances fit this definition. The record is clear that Mr. Coffey contacted Mrs. Coffey’s attorney immediately prior to the alimony rule and told him that the parties had agreed that he would pay this sum. He appeared at the rule and also so advised the judge. Thus it can be said that while he had made an agreement to pay alimony, that agreement did not become a civil obligation for “want of form” because of the failure to include the alimentary terms of the judgment on rule in the divorce judgment. Nevertheless, we .conclude that the question of whether the instant circumstances present a natural obligation is better considered in terms broader than that of the “want of form” context of former LSA-C.C. Art. 1758.
We are influenced in this view by our determination that the list of natural obligations contained in former LSA-C.C. Art. 1758 was illustrative rather than exclusive. The analysis of the court in Muse v. St. Paul Fire and Marine Insurance Co., 328 So.2d 698, at 705 (La.App. 1st Cir.1976), is persuasive:
Although our jurisprudence exhibits some uncertainty regarding whether the listing in article 1758, above, is exclusive or illustrative, we find the authorities establish that the examples therein included are in fact illustrative. Notwithstanding Succession of Miller v. Manhattan Life Ins., 110 La. 652, 34 So. 723 (1903), which held article 1758, above, exclusive, numerous subsequent decisions have found other obligations to be natural obligations although they do not fit within either of the four categories in said article. See, for example, Foster & Glassell Co. v. Harrison, 168 La. 500, 122 So. 595, a son being held to pay an unenforceable debt against his parent’s estate; Interstate Trust & Banking Co. v. Irwin, 138 La. 325, 70 So. 313, a bank director held liable on a note given to prevent impairment of bank stock, and Mortgage Investment v. Natal, 181 La. 651, 160 So. 128, an endorser held liable despite a release of his obligation resulting from an extension granted the principal obligor. See also comments on the question and authorities therein cited, Martin, Natural Obligations, 15 Tulane L.R. 497; Comment, Natural Obligations, 12 La.L.R. 79; 17 Tulane L.R. 310.
For the foregoing reasons, we conclude that payments made under this unenforceable judgment of alimony at issue, a judgment the plaintiff had specifically agreed to, were in furtherance of a natural obligation of the plaintiff and are thus not recoverable.
Mr. Coffey also claims on appeal that the trial judge erred in reforming the final divorce judgment to include a $250 per month alimony payment. We agree with this contention. We have held that Mr. Coffey may not recover the sums which he paid because they were given in furtherance of a natural obligation. A natural obligation is not enforceable by judicial action. LSA-C.C. Art. 1761.[6] Thus, the reformation of the judgment is inconsistent with our holding.
In so holding, we have not specifically disapproved of our trial brother’s determination that there was an oral contract to pay alimony indefinitely, though we admit reservations in this respect.[7] However, even if considered in that context, the via *207 bility of the alimony arises from the fact that a contract existed to pay the alimony and not from the fact that alimony should have been in the divorce judgment. In other words, to say on one hand that there was an oral enforceable contract outside the judgment contradicts the concept that the judgment should be reformed. See also LSA-C.C.P. Art. 1703 precluding a default judgment which exceeds the demands of plaintiff’s petition.[8]
For the reasons aforesaid, the judgment appealed is amended to strike therefrom the clause ordering the reformation of the divorce judgment “signed on 21 June 1972 in those proceedings entitled ‘James A. Coffey v. Fleta Faye Coffey’ bearing docket number 299,392.” In all other respects, the judgment is affirmed at the cost of appellant.
AFFIRMED.

. Alimony agreements need not be incorporated into a court judgment and may be enforceable according to their own terms or the proven intent of the parties. Oberfett v. Oberfell, 516 So.2d 424 (La.App. 1st Cir.1987); Romero v. Romero, 509 So.2d 681 (La.App. 3rd Cir.1987), writ denied, 512 So.2d 427 (La.1987); King v. King, 493 So.2d 679 (La.App. 2d Cir.1986), writ denied, 497 So.2d 316 (La.1986); Spencer v. Spencer, 472 So.2d 302 (La.App. 3rd Cir.1985); Jones v. Jones, 459 So.2d 1200 (La.App. 5th Cir.1984), writ denied, 462 So.2d 649 (La.1985); Braning v. Braning, 449 So.2d 670 (La.App. 4th Cir.1984). However, the question of the enforceability of an oral contract for permanent alimony is, to our knowledge, a novel one. However, see Bagby v. Dillon, 434 So.2d 654 (La.App. 3rd Cir.1983), writ denied, 440 So.2d 150 (La.1983), finding an oral agreement regarding the interpretation of an in globo child support award. See also Gibson v. Gibson, 464 So.2d 914 (La.App. 4th Cir.1985), regarding the interpretation of each side’s view of an oral agreement for termination upon the occurrence of a certain condition.

. Mr. Coffey is now married to the woman with whom he was living upon Mrs. Coffey’s discharge from the hospital.

. This concept is now treated by LSA-C.C. Art. 1761, which provides in pertinent part, "[a] natural obligation is not enforceable by judicial action. Nevertheless, whatever has been freely performed in compliance with a natural obligation may not be reclaimed.”

. Of course this argument is weakened by the trial court’s determination that Mr. Coffey did more than agree with Mrs. Coffey's attorney to a judgment for pendente lite alimony. The trial court’s determination is enhanced by the fact that Mrs. Coffey’s original suit was solely for divorce, and it was obtained only 13 days after the judgment on rule awarding the instant alimony.

. The quoted material in brackets are the notes of the editors of LSA where this comment was originally located. They are retained because of their interesting amplification of the issue.

. Former LSA-C.C. 1757(2) expresses the matter in basically the same terms.

. As we have noted earlier, written contracts to pay alimony which are not incorporated in a divorce judgment have been found enforceable under certain circumstances. However, we admit some trepidation in considering the enforceability of an oral agreement to pay alimony particularly where, as in the instant case, it can be strongly argued that that agreement was not to contractually pay alimony but was to not contest a judgment to pay a certain sum of alimony.

. We have not considered the reformation issue in terms of LSA-C.C.P. Art. 1703 because it can be argued that under a liberal reading of the allegations of plaintiffs divorce petition, permanent alimony was sought.