509 So.2d 681 (1987)
James ROMERO, Plaintiff-in-Rule, Appellee,
v.
Deanna Duhon ROMERO, Defendant-in-Rule, Appellant.
No. 86-543.
Court of Appeal of Louisiana, Third Circuit.
May 13, 1987.
*682 Kenneth W. Cole, Lafayette, for defendant-appellant.
James M. Miller, Jr., of Cline, Miller and Richard, Rayne, Norman L. Williams, Lake Charles, Mouton, Roy, Kenneth M. Henke, Lafayette, for plaintiff-appellee.
Before STOKER, LABORDE and YELVERTON, JJ.
YELVERTON, Judge.
The issue presented is whether the obligation to pay alimony based on a contract providing that the husband pay the wife $500 alimony per month after divorce until death or remarriage, terminates when the wife enters into open concubinage. The trial court found that it was the intent of the parties that the alimony payments were to be terminated should the wife enter into open concubinage, and rendered judgment in favor of the husband. We reverse.
These parties in 1985 brought us another alimony dispute in which the husband sought modification of alimony based on a change of circumstances. 463 So.2d 768 (La.App. 3rd Cir.1985). We decided then that the wife had not proved a change of circumstances, and we ordered the husband to keep on paying $500 a month. In that case, because there was a judgment ordering the payment of alimony, both the parties and the court apparently just assumed that the award was governed by La. Civil Code article 160 and that it was accordingly subject to modification by the court.
In the present case Deanna correctly points out that the judgment simply adopted a stipulated agreement concerning alimony after divorce, and that the alimony obligation is contractual in nature. In July 1982, James filed suit seeking a divorce from Deanna. Accompanying the petition were certain rules to show cause, one of which concerned alimony, as to which a joint stipulation was filed reading as follows:
"It is hereby stipulated by and between the parties herein that James Romero shall pay unto Deanna Duhon Romero the sum of $500.00 per month as alimony pendente lite, beginning July 5, 1982, and each month thereafter until such time as a divorce be rendered between them and after divorce shall pay unto Deanna Duhon Romero the sum of $500.00 per month thereafter until her death or remarriage, whichever comes first."
A divorce was granted in September 1982 ordering James, based on that stipulation, to pay Deanna "the sum of $500.00 per month thereafter until death or remarriage, whichever comes first." In June 1985 James filed a rule to rescind, and in the alternative, to reduce, alimony. The basis for the rule to rescind was that Deanna was living in open concubinage, and that this status, the same as would remarriage, put an end to the alimony obligation. The basis for the alternative rule for a reduction was based upon change of circumstances, i.e., a reduction of need due to her concubine status.
At the hearing on this rule in September 1985 it was stipulated that appellant was living in open concubinage. The trial court terminated alimony. This is the judgment being appealed.
Before the amendments made by Act 627 of 1978 and Act 711 of 1979, La. Civ.Code art. 1790 rendered husband and wife incapable of contracting with one another. That incapacity was removed by these amendments. Spencer v. Spencer, 472 So.2d 302 (La.App. 3rd Cir.1985), quoting from Braning v. Braning, 449 So.2d 670 (La.App. 4th Cir.1984). Alimony after divorce can now be made the subject of a contract and is considered a consent decree. Cunningham v. Cunningham, 448 So.2d 910 (La.App. 3rd Cir.1984). Alimony agreements need not even be incorporated into a *683 court judgment; they are enforceable according to their own terms or the proven intent of the parties. Spencer, supra.
One reason given by the trial court for its decision was that a construction of the contract that would require a man to pay alimony to his ex-wife while she was living in open concubinage would render the contract contra bonos mores. We disagree. Open concubinage is contra bonos mores, but payment of alimony is not. Here we are dealing with a contract the object of which is the payment of alimony after divorce. That object is perfectly lawful as well as moral. See Cunningham, supra. The contract does not call on either party to do anything illegal or immoral. Therefore, the trial court's conclusion that the contract was contra bonos mores is clearly wrong.
The other reason given by the trial court in its written reasons was a valiant effort to equate the term "remarriage", as used in the stipulation, with open concubinage. The trial judge thought that:
"[t]he term `remarriage' as used in the stipulation connotes a situation where two members of the opposite sex live together openly and look to each other for support, not to a former spouse. The mere fact that the couple has not stood before a Justice of the Peace should not permit them to contravene the true meaning and intent of their agreement."
The law does not equate marriage and concubinage in any legal sense. Cf. Benoit v. Benoit, 379 So.2d 270 (La.App. 3rd Cir. 1979). Also, among the civil effects which flow from the contract of marriage is the legal obligation of support that spouses owe one another. La.Civil Code Article 119. Upon partners living in open concubinage there is no such obligation imposed. Concubinage is a relationship in which a man and a woman are involved in an open, illicit sexual relationship approximating marriage. Succession of Bacot, 502 So.2d 1118 (La.App. 4th Cir.1987), writ denied 503 So.2d 466 (La.1987). But this is not a marriage.
Both sides tried to enlist a 1982 amendment to La.C.C. art. 160 in support of his and her contentions. Before the amendment this article provided that permanent periodic alimony should be revoked if it became unnecessary and terminated if the spouse to whom it had been awarded remarried. Effective September 10, 1982, the act was amended to provide for an additional basis for termination: "... if the spouse to whom it has been awarded ... enters into open concubinage." The judgment of divorce incorporating the language of their alimony contract was signed by the court just five days after the effective date of the 1982 amendment, but it incorporated an agreement in the form of the stipulation that was filed into the record on July 9, 1982, before the amendment. The amendment has nothing to do with our case. The question is simply one of interpretation of a contract. James's attorney prepared the stipulation which forms the contract; the language used was his. The stipulation is completely devoid of any reference to open concubinage. The causes of termination of payments were listed. The contract is clear and unambiguous.
The joint stipulation prepared by the husband's attorney and signed by both parties is a valid and binding contract. Both parties had capacity. There was a lawful cause. Appellee agreed to pay appellant $500 per month if she would give up custody of their minor children and the use and occupancy of the community home. If the parties had simply allowed the court to determine the amount of alimony, that award would have been governed by La. Civ.Code art. 160 and would have been subject to modification by the court. As it is, appellee bargained away his right under La.Civ.Code art. 160 to have post-divorce alimony terminated when it was no longer necessary. See King v. King, 390 So.2d 250, 254 (La.App. 3rd Cir.1980), writ denied 396 So.2d 884 (La.1981). At the same time, appellant bargained away any right she may have had to seek alimony beyond the terms of the agreement. Both parties consented to the contract as evidenced by their signatures upon it.
*684 La.Civ.Code art. 1983 provides that "[c]ontracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law." Therefore, it was the duty of the trial court to interpret the disputed provision of the contract according to its text without reference to what might have been the result had the parties agreed to be governed by the applicable code articles. Stipulations between parties in a specific case are binding upon the trial court in the disposition of that case where the stipulations are not in derogation of the law. General Investment, Inc. v. Thomas, 400 So.2d 1081 (La.App. 4th Cir.1981).
Interpretation of a contract is the determination of the common intent of the parties. La.Civ.Code art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La.Civ.Code art. 2046.
The wording of the contract with respect to the time when the agreed upon payments should cease is entirely unambiguous. Death or remarriage releases appellee from his obligation under the contract to pay alimony; open concubinage does not.
We reverse the judgment below insofar as it terminated alimony. Judgment is now rendered on the rule for termination of alimony against the plaintiff-in-rule, James Romero, and in favor of the defendant-in-rule, Deanna Duhon Romero, dismissing that rule. The judgment below followed a trial that involved more rules than this one, and we note that the greater part of the testimony in the record dealt with the resolution of those rules. For that reason, we will leave intact the trial court's assessment of trial costs one-half to each party. The appellee, James Romero, will pay all costs of this appeal.
REVERSED AND RENDERED.