|2GONZALES, Judge.
The salient issue in this case is whether alimony, paid pursuant to a contract which provides for termination upon the recipient spouse’s death or remarriage, is likewise terminated by the recipient spouse entering into open concubinage.
Kenneth R. Becker and Mariella Mooney Becker were divorced in 1987. The Beckers signed a community property settlement agreement dated December 14, 1987, wherein Mr. Becker agreed to pay Mrs. Becker $1,300.00 per month in alimony until her death or remarriage. Some time in 1989 Mr. Becker stopped making alimony payments. Mrs. Becker filed a petition on March 11, 1991, alleging that Mr. Becker owed her $21,900.00 in back alimony payments, plus additional sums that accrued on a monthly basis during the pendency of the proceedings.
Mr. Becker answered the petition, alleging that Mrs. Becker “is not and has not been entitled to receive permanent alimony from Kenneth R. Becker for the reason that she has lived in open concubinage, in contravention to the public policy of the State of Louisiana, and is not entitled to collect permanent alimony.”
The parties stipulated to the following pertinent facts: 1) Mr. Becker stopped making alimony payments some time in 1989; 2) on or before March of 1989, Mrs. Becker began a relationship with a man to whom she was not related; 3) in November of 1990, Mrs. Becker’s home was foreclosed upon and she began sharing a residence with that man; and, 4) Mrs. Becker is living in open concubinage with the unidentified male.
The trial court ruled in favor of Mrs. Becker by judgment dated September 20, 1993, ordered Mr. Becker to pay Mrs. Becker $1,300.00 per month as contractual permanent alimony and found him in arrears for $57,000.00 plus legal interest. Mr. Becker filed a motion for new trial, which was denied. Mr. Becker is appealing the Judgment dated September 20, 1993, and makes the following assignments of error:
1. The trial court erred in interpreting silence regarding concubinage in a community property settlement to mean that the parties intended for the alimony to contin *1367 ue when the former wife lives in open concubinage.
2. The trial court erred in finding that the payor spouse remains obligated to the recipient spouse for contractual alimony, under the specific terms of their community property agreement, when she enters into an open, sexual relationship with a man to whom she is not married in direct violation of the public policy of this state.
3. The trial court erred in not finding that entering open concubinage constitutes bad faith that would vitiate the contract.
THE PERTINENT TERMS OF THE CONTRACT
Section 4(d) of the contract between Mr. Becker and Mrs. Becker provides as follows:
In consideration of the mutual understandings and transfers between the parties, Husband agrees to pay and Wife agrees to accept permanent alimony in the amount of $1300.00 per month until her death or remarriage. The parties agree and acknowledge that the issue of fault in dissolution of the marriage has not been litigated and is disputed. The agreement to pay alimony contained herein does not constitute an admission that alimony is due, but said contractual agreement is entered into to avoid litigation of that contested issue. Wife, on her part, in consideration of the agreement to pay alimony, waives any and all rights to seek alimony in any further amount and recognizes this as a full and final settlement and compromise of her right to seek alimony from Husband. As security for this obligation, Husband agrees to purchase and maintain in full force and effect a life insurance policy on his own life with Mariella Mooney Becker as irrevocable beneficiary payable on the death of Kenneth Becker in the amount of $80,000.00. This insurance guarantee may be funded through Equitable Variable Life Insurance Policy number 33-568-287 in the face amount of $50,-000.00 and Armed Forces Relief and Benefit Association Policy number 5846G in the face amount of $30,000.00. Wife agrees that in the event of her remarriage she shall have the obligation to transfer title, if title has been transferred to her, and to cooperate in allowing revocation of beneficiary states [sic] and to cooperate in the transfer of cash values under said policies or any substitute policies back to Husband and he shall have the right to cancel such policies.
Section 4(g) of the contract provides as follows:
Notwithstanding the above, it is agreed that if Wife should obtain any gainful employment or derive any income from wages or from the production of goods or rendition of services either individually or as derived from any partnership, corporation or joint venture in excess of $500.00 per month the alimony payable hereunder shall be reduced on a | ¿[dollar for dollar basis. Wife agrees to provide a copy of her income tax return for each calendar year to husband within 30 days of the filing thereof. If none is filed, she shall produce a statement of income and earnings no later than May 15 of each year.
ASSIGNMENTS OF ERROR NO. 1 AND 2
In his brief, Mr. Becker cites La.C.C. art. 2045, which provides “Interpretation of a contract is the determination of the common intent of the parties.” Mr. Becker then contends that:
Because this contract contained expressed resolutory conditions, ie [sic], reduction for work, and termination at remarriage and death, the common intent of the parties can only be that Mr. Becker was to provide limited financial assistance until such time as the alimony was not needed. The inclusion of these resolutory conditions does not exclude all other reso-lutory conditions, because La.C.C. Art. 1768 states that a condition may be expressed in a stipulation, or implied by [the] law, the nature of the contract or the intent of the parties.
Mr. Becker further contends that:
Because the contract was silent with regard to the issue of concubinage, La.C.C. art. 2054 must be applied. That article states that when the parties have made no provision for a particular situation, it must *1368 be assumed that the parties intended to bind themselves not only to the expressed conditions of the contract but also to whatever the law, equity, or usage regards as implied in a contract of that kind or necessary for the contract to achieve its purpose.
Louisiana Civil Code article 112(A) provides in pertinent part:
(4) Permanent periodic alimony shall be revoked if it becomes unnecessary and terminates if the spouse to whom it has been awarded remarries or enters into open concubinage.[2]
Mr. Becker contends that, because the parties did not make any provision for open concubinage, La.C.C. art. 112 should apply to revoke the alimony Mrs. Becker receives.
THE JURISPRUDENCE
The trial court, in its reasons for judgment, relied upon a case on point, Romero |5v. Romero, 509 So.2d 681 (La.App. 3rd. Cir.), writ not considered, 512 So.2d 427 (La.1987). In Romero, the trial court terminated contractual alimony based upon the wife living in open concubinage. The appellate court, in reversing the trial court, found:
One reason given by the trial court for its decision was that a construction of the contract that would require a man to pay alimony to his ex-wife while she was living in open concubinage would render the contract contra bonos mores. We disagree. Open concubinage is contra bonos mores, but payment of alimony is not. Here we are dealing with a contract the object of which is the payment of alimony after divorce .... The contract does not call on either party to do anything illegal or immoral. Therefore, the trial court’s conclusion that the contract was contra bonos mores is clearly wrong.
We agree with the Romero court that while open concubinage may be contra bonos mores, the payment of alimony under the contract is not.
In Wagner v. Wagner, 535 So.2d 1269 (La. App. 3rd Cir.1988), writ denied 538 So.2d 592 (La.1989), the Wagners entered into a stipulation regarding alimony and child support. The judgment of divorce dissolved the marriage and incorporated the stipulations previously entered into regarding alimony and child support. Mr. Wagner later filed a rule to revoke or modify alimony, which was denied by the trial court. On appeal, Mr. Wagner argued that the trial court erred in refusing to consider evidence which he offered to show a change in circumstances warranting revocation or modification of alimony.
The Wagner court likened this contention to that of Mr. Romero in Romero, stating:
The contention of appellant in this case differs from that made in Romero, supra, only in the reason under La.C.C. art. 160(A)(4) which allegedly would support a decree terminating alimony, i.e., a distinction without a difference. We adhere to the conclusion reached by this court in Romero, supra, that the contract of transaction or compromise entered into by the parties is binding upon the parties and is not subject to modification or termination by the court pursuant to La.C.C. art. 160A(4).
|6535 So.2d at 1272.
In G'rumling v. Crumling, 628 So.2d 1194 (La.App. 3rd Cir.1993), Mr. and Mrs. Crumling entered into a stipulation for payment of alimony which was incorporated by reference into the judgment of divorce. Later, Mr. Crumling brought a rule to have the alimony payments reduced, alleging several changes in circumstances pursuant to La. C.C. art. 112. The Crumling court reasoned that in Wagner and Romero, the stipulations for alimony “until death or remarriage” barred alimony modifications on the basis of open concubinage in Romero, and on the basis of changes in circumstances in Wagner, because each involved alimony stipulations containing explicit guidance as to the duration of alimony payments. As such, they represent exceptions to the general rule that either spouse may seek a change in alimony *1369 on the basis of a change in circumstances. Crumling, 628 So.2d at 1197.
Louisiana Civil Code article 2046 provides “When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” We find that the contract between Mr. and Mrs. Becker is clear and explicit. It provides only two circumstances which result in termination of alimony, that is, Mrs. Becker’s remarriage or death. There is no mention of open concubinage, and no reference to the predecessor of La.C.C. art. 112(A)(4). Mr. Becker and Mrs. Becker both reviewed the contract with their respective attorneys as acknowledged by them in section 6(a) of the contract, titled “Informed Consent,” which states:
The parties acknowledge that: they are entering into this Agreement freely and voluntarily; they have ascertained and weighed all the facts and circumstances likely to influence their judgment with respect to the transactions set forth herein; they have been duly apprised of their respective legal rights with respect to the community property settlement; all provisions of this Agreement, as well as all questions pertinent thereto, have been explained fully and satisfactorily to them by their respective attorneys, and that they have given due consideration to such provisions and questions; and they fully understand and assent to all other provisions 17of this Agreement.
Further, each party signed a separate “Ac-knowledgement” page which states that he/ she was “acting on the advice of counsel, and has read and understands the foregoing Settlement of Community Property Agreement ...” We find that Mr. and Mrs. Becker have an express provision providing explicit guidance as to the duration of alimony payments; therefore, there is no need to search any further for their intent. These assignments of error have no merit.
ASSIGNMENT OF ERROR NO. 3
Mr. Becker contends that by living in open concubinage, rather than remarrying, Mrs. Becker is in bad faith. Further, Mr. Becker cites La.C.C. art. 1772, which states “A condition is regarded as fulfilled when it is not fulfilled because of the fault of a party with an interest contrary to the fulfillment.” Mr. Becker argues that “[t]he resolutory condition of remarriage has not been fulfilled, because Mrs. Becker has chosen to live in a relationship equal to marriage, without the formality.”
The law does not equate marriage and concubinage in any legal sense. Romero v. Romero, 509 So.2d at 683. Cf Benoit v. Benoit, 379 So.2d 270 (La.App. 3rd Cir.1979). Therefore, we find the argument that “the resolutory condition of remarriage has been fulfilled” by Mrs. Becker’s choosing to live in open concubinage has no merit.
Further, we note that Mr. Becker does not wish to vitiate the entire contract because of Mrs. Becker’s alleged bad faith, he only wishes to vitiate a portion of the contract which he perceives as unfavorable to him, that is, continued alimony payments under the contract. If the contract were vitiated due to bad faith, Mrs. Becker would be free to seek a share of Mr. Becker’s retirement benefits, and free to seek increased alimony. The parties would have to litigate the issue of fault, which they did not wish to do according to the language of their contract.
In the absence of a vice of consent, a court cannot undermine a contract simply Isbecause it was a bad deal for one of the parties. Billingsley v. Bach Energy Corp., 588 So.2d 786, 791 (La.App. 2d Cir.1991). We find no merit in this assignment of error.
DECREE
For the foregoing reasons, the trial court judgment is AFFIRMED. Mr. Becker is cast with costs.

. This language is exactly the same as that found in La.C.C. art. 160(A)(4) which was in effect at the time the community property settlement agreement was signed by the parties on December 14, 1987.