# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT


## 12-128


**VICTORIA L. BURNS**

**VERSUS**

**JAMES M. BURNS**


\*\*\*\*\*\*\*\*\*\*

## APPEAL FROM THE
## FIFTEENTH JUDICIAL DISTRICT COURT
## PARISH OF LAFAYETTE, DOCKET NO. C-20095247
## HONORABLE ANNE L. SIMON, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*


## SYLVIA R. COOKS
## JUDGE


\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, J. David Painter, and James T. Genovese, Judges.


**AFFIRMED.**

Laura L. Davenport
730 Jefferson Street
Lafayette, LA  70501
(337) 231-1397
**ATTORNEY FOR PLAINTIFF/APPELLEE**
    Victoria L. Burns

J. Marshall Montgomery
802 Johnston Street
Lafayette, LA  70501
(337) 269-0083
**ATTORNEY FOR DEFENDANT/APPELLANT**
    James M. Burns

**COOKS, Judge**

## FACTS AND PROCEDURAL HISTORY

James M. Burns and Victoria L. Burns were divorced in a Massachusetts family court on March 3, 2010, dissolving their March 23, 1991 marriage. There were four children born of the marriage, three of whom were minors at the time of divorce.

A notarized "Agreement" setting forth stipulated terms and conditions governing child custody, child support and spousal support was appended to the Judgment of Divorce. The Agreement set forth that each party was represented by counsel in its creation, had the opportunity for full disclosure, and understood that it would be enforceable as if a judgment had been entered.

Following the divorce, Victoria became a resident of Louisiana. The children resided with her. James became a resident of Florida. On December 7, 2010, the Agreement was registered in the State of Louisiana. Victoria also filed a Rule for Sole Custody of the minor children as well as a Motion for Contempt against James for underpayment of alimony.

The parties stipulated that in the spring of 2011, Victoria began living with her fiancé, Chad Newgebaver, until his sudden death a few months later. Due to this cohabitation, James filed a Motion to Terminate Spousal Support on April 13, 2011. James argues La.Civ.Code art. 115 applied, which provides for the extinguishment of spousal support upon a finding of cohabitation. James argued the provision for Louisiana jurisdiction triggered the application of Louisiana law calling for the extinguishment of spousal support based on Victoria's cohabitation. Victoria countered that the Agreement clearly provides for the modification of spousal support only upon death or remarriage, both of which have not occurred.

On October 7, 2011, the trial court issued a ruling on the Rule for Sole Custody and the various motions involving spousal support. The trial court granted Victoria sole custody of two of the three minor children. This portion of the trial court's judgment was not appealed.

As to James' request for termination of spousal support, the trial court found the fact that Victoria cohabitated with another man in the manner of married persons for a few months in the spring of 2011 did not, under the terms of the Agreement, terminate all spousal support. The fact that the issues between the parties were being litigated in Louisiana did not require application of all Louisiana law when the contract is clear and unambiguous. The trial court found the Agreement was not ambiguous, was not against public policy, was the result of the exchange of mutual considerations, and should be enforced as written, which allowed for modification of spousal support only upon death or remarriage. The trial court also held the Agreement provided that the alimony payments made by James should be based on gross commissions from his employment rather than net commissions.

James filed this appeal from the trial court's judgment, asserting the following assignments of error:

> (1) the trial court erred in denying James' Motion to Terminate Spousal Support; and

> (2) the trial court erred in finding that alimony payments should be based on gross commissions rather than net commissions.

## ANALYSIS

A trial court's determination regarding final periodic support is subject to the abuse of discretion standard of review. *January v. January*, 03-1578 (La.App. 3 Cir. 4/7/04), 876 So.2d 98.

I. *Termination of Spousal Support.*

3

In his first assignment of error, James contends Victoria's cohabitation with her then fiancé required the termination of spousal support under Louisiana law. Victoria argued a reading of the Agreement indicates it specifically provides that Massachusetts law controls:

> (11)   This Agreement has been executed and completed in Massachusetts and is a Massachusetts contract, and all matters affecting the interpretation and the rights of the Parties hereunder, shall be governed by the laws of the Commonwealth of Massachusetts.

However, James points out that another section of the Agreement provides that Louisiana law is to be applied to enforcement and/or modification:

> (18)   The Parties shall cooperate in having the State of Louisiana adopt this Agreement as a Foreign Judgment so that it may be enforced and or modified in the State of Louisiana.

James argues because the Agreement provides that it may be "enforced or modified in the State of Louisiana," it is clear that the application of Louisiana law calling for the extinguishment of alimony upon cohabitation (La.Civ.Code art. 115) is triggered. The trial court entertained this argument below, and determined that simply because the issues between the parties are being litigated in Louisiana does not require application of all Louisiana law when the contract between the parties is clear and unambiguous. We agree.

The Agreement herein was a mutually agreed upon contract and is to be interpreted according to contract law. As Victoria notes, the Agreement clearly and unambiguously provides only two instances which allow for modification of alimony – death or remarriage. Neither of those instances occurred herein.

We also note the trial court emphasized the contract should be enforced as written, because "[t]o do otherwise would invalidate a part of the consideration obtained by one party without taking into account the possible quid pro quo for that consideration." We agree with the trial court, and believed the contract should be interpreted in accordance with the terms mutually entered into by the parties.

4

James also argues, as he did below, that to enforce the Agreement as written is *contra bonos mores*, a violation of the public policy of Louisiana. The trial court in dismissing this argument, cited this Court's opinion in *Romero v. Romero*, 509 So.2d 681 (La.App. 3 Cir. 1987), *writ not considered*, 512 So.2d 427 (La.1987), wherein we reversed a trial court's judgment terminating contractual alimony based upon the wife living in open concubinage. In reversing the trial court, we stated:

> One reason given by the trial court for its decision was that a construction of the contract that would require a man to pay alimony to his ex-wife while she was living in open concubinage would render the contract *contra bonos mores*. We disagree. Open concubinage is *contra bonos mores*, but payment of alimony is not. Here we are dealing with a contract the object of which is the payment of alimony after divorce. . . . The contract does not call on either party to do anything illegal or immoral. Therefore, the trial court's conclusion that the contract was *contra bonos mores* is clearly wrong.

*Id.* at 683

We agree with the decision in *Romero*, that while open concubinage may be *contra bonos mores*, the payment of alimony under a contract is not. See also *Becker v. Becker*, 94-1224 (La.App. 5 Cir. 5/5/95), 654 So.2d 1365, 1369, wherein the court found "[t]he law does not equate marriage and concubinage in any legal sense" and found no merit in the argument that the "resolutory condition of remarriage [was] fulfilled" by the choice to live in open concubinage.

Likewise, in *Crumling v. Crumling*, 628 So.2d 1194 (La.App. 3 Cir.1993), the parties entered into a stipulation for payment of alimony which was incorporated by reference into the judgment of divorce. Later, Mr. Crumling brought a rule to have the alimony payments reduced, alleging several changes in circumstances pursuant to La.Civ.Code art. 112. This court noted that in *Romero*, the stipulations for alimony "until death or remarriage" barred alimony modifications on the basis of open concubinage, because it involved alimony stipulations containing explicit guidance as to the duration of alimony payments.

5

James argues La.Civ.Code art. 115 as presently written did not become law until after the effective date of the contract at issue in *Romero*, thus it does not apply here. However, the prior law in *Romero* was La.Civ.Code art. 160A(4) (emphasis added) which provided that "[p]ermanent periodic alimony shall be revoked if it becomes unnecessary and *terminates if the spouse* to whom it has been awarded remarries or *enters into open concubinage*." Thus, the same prohibition existed at that time as it does now, it was merely previously styled open concubinage as opposed to the present styling of cohabitation in the manner of married persons. This change in wording provides no substantive change. This court's ruling in *Romero* that the stipulations for alimony "until death or remarriage" bars any alimony modifications on the basis of one of the parties living with another person is still the law of this circuit.

## II. *Calculation of Spousal Support.*

James also assigns as error the trial court's determination that the spousal support calculation is to be based on gross rather than net commissions. We find the trial court entertained the same arguments below that are presented on appeal, and we adopt the trial court's well-reasoned analysis as our own:

> James M. Burns has paid his support based on 33% of his net rather than gross commissions. This method of determining his obligation has triggered Victoria L. Burns' motion for contempt for underpayment. To resolve this issue, the court is called upon to interpret the Agreement.
>
> Exhibit B of the Agreement provides for the payment of alimony from commission earnings.
>
> > 2. In addition to child support amount and subject to provisions of Paragraph 4 below, the Husband shall pay to the Wife, as alimony, 33% of any commissions earned through his employment at Oracle or other employment. Alimony derived from commission payments shall be paid within 10 days of the close of each quarter (i.e. March 31, June 30, September 30 and December 31).
>
> The court is of the opinion that the provision is clear. The Agreement provides for payment of 33% of commissions *earned*. The generally

6

accepted meaning of earnings is gross rather than net. The provision that follows, which uses the term *payment*, refers to the time of transfer of the amount due to the Wife.

Victoria L. Burns argues that substantive rights are determined by the law of the place and that is the law of Massachusetts that alimony is based upon gross income. See *Wooters v. Wooters*, [74 Mass.App.Ct. 839, 911 N.E.2d 234 (2009)]. James M. Burns disagrees with that interpretation of Massachusetts law. This court does not believe it necessary to determine the law of Massachusetts because interpretation of the contract is clear from its terms, specifically the use of the word *earned* in exhibit B, paragraph 2.

In addition to the generally accepted meaning of the word *earned*, there is additional support for the position of Victoria L. Burns. Nowhere in the Agreement is there any reference to net rather than to gross income. See for example the following:

> 5.  Each Party shall furnish the other with reasonable documentation to confirm the gross amount of any earned income. . .
> 6.  The Parties agree that if the Husband receives any gross income from Continental Resources through his former partnership. . .
> 7.  The Parties agree that an annual accounting shall be done by Chuck Swartz with respect to any gross income the Husband receives from Advanced Technology Solutions and/or Continental Resources.

If the intention was for the calculation to be made from net payments, there should be some recitation of the deductions to be taken to determine that amount. There is none.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against appellant, James M. Burns.

**AFFIRMED.**