690 So.2d 263 (1997)
F & S ENTERPRISES, INC.
v.
Walter CURE, a/k/a Walter J. Cure, III, and Cure's Waste Oil Service.
No. 96-CA-0729.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 1997.
Rehearing Denied April 15, 1997.
Charles M. "Tex" Stevenson, Covington, for Plaintiff-Appellant F & S Enterprises, Inc.
Michael F. Escudier, Arabi, for Defendant-Appellee Walter Cure, d/b/a Cure's Waste Oil Services.
Before SCHOTT, C.J., and KLEES, BYRNES, ARMSTRONG and MURRAY, JJ.
KLEES, Judge.
Plaintiff appeals the district court's dismissal of his claim against defendant for reimbursement of partnership assets and damages. Upon our review of the record, we affirm.
In late 1988, plaintiff F & S Enterprises, in the person of its lone shareholder, Felix Sapp, and defendant Walter Cure decided to *264 go into business together. They were to collect used oil for recycling, a business with which Sapp was very familiar. He had already owned and operated a similar enterprise, and as such possessed the appropriate building space, trucks, tanks and other equipment. While Cure was a newcomer to this particular facet of the industry, he had transported and sold oils in the past.
They elected to form a partnership in commendam, with F & S as the limited partner and Cure as the general partner. Sapp sold his two freightliner trucks to Cure, who then brought them into the partnership as his initial contribution. Sapp, in turn, arranged for a $12,000 loan to get the business started. In their partnership agreement, they agreed to lease from F & S Enterprises the plant where the oil could be stored and made ready for market. The monthly rental payments were to be 10% of the value of all material coming through the leased premises; the lease was to run from November 18, 1988 to November 18, 1990.
At first, this arrangement worked smoothly. After an initial period when Sapp did the billing, Cure took over all the day-to-day operations of their business, Cure's Waste Oil Service. For some years the partnership prospered.
The lease on their business property expired and was never renewed; Cure kept paying rent to F & S Enterprises at the same rate for almost two years. Then, Sapp and Cure agreed to a new rental of $1000.00 per month, beginning in September of 1992. No new lease was signed.
During these years, the two trucks Sapp had originally sold to Cure were showing signs of wear, and were becoming unfit for the work of transporting oil. In March of 1992, Cure purchased a new truck in his own name, writing the check for this truck from partnership funds. From that point on, his new truck was the one used to carry out the company's business.
In the meantime, both Cure and Sapp had become dissatisfied with their situation. Profits had fallen off, and the structure of a partnership in commendamleaving the limited partner more isolated from the business while placing heavier burdens on the general partnerappears to have been misunderstood and disliked by them both.
Apparently the strain on their association resulted in some disagreements about the rental payments for business property. After an initial payment of $10,000.00, Cure then sent Sapp a check for $9607.00, with the words "full and final settlement of any and all rights and/or causes of actions regarding 1991 profits and rents" written on its back. Sapp drew a line through the words, then cashed the check.
Finally, in 1992, Cure and Sapp began to discuss ending their partnership. While the testimony conflicts on this point, apparently several different options, from simple dissolution to a buyout, were proposed, but no agreement was ever reached.
At the end of 1992, effectively the partnership without informing Sapp. He paid off partnership debts, collected outstanding balances, and closed the books of Cure's Waste Oil Service in early 1993. Some small inventory and cash remained on hand, as did a balance due on a loan to an employee. Cure left these intact.
He did, however, embark on a new enterpriseCure's Used Oil Service, a business greatly similar to the one he had just dissolved. Its location, operation and customers were, in fact, identical to those of Cure's Waste Oil Service. However, this new business was not a partnership, but a sole proprietorship owned and operated by Cure alone.
Sapp did not learn of this until he received a rent check in February or March of 1993; while this was rent for the same premises he had leased to his partnership, the check was issued in the name of a different company. He called Cure and only then learned of his partnership's dissolution.
Sapp then sued Cure in district court, alleging that Cure owed him past rents and had breached his fiduciary duty. The trial court ruled in favor of Cure, finding that Sapp had failed to prove any of his various claims against Cure by a preponderance of the evidence, and dismissed this case with prejudice.
*265 From this judgement Sapp appeals, citing six assignments of error. He first argues that the trial judge erred in not awarding the 1992 partnership share of profits to plaintiff. However, the trial court reviewed the tax returns and the accounts of the partnership and found that Sapp had already been paid his rightful share of the profits. Upon review of this record, we cannot say that the trial court's calculation of the profit distribution is inaccurate. The accounting provided by the defendant is admittedly less precise than would be desirable; however, it supports the trial court's findings that the plaintiff has received all profits due. Moreover, the record is absent of any specific allegations suggesting that these financial statements are in any way fraudulent or misleading. Given these facts, the trial court's assessment should stand.
Plaintiff then argues that he is owed past-due rents from the defendant for 1991, and that the court committed reversible error by declining to award such rents. However, he cashed a check dated by defendant in the amount of $9607.00, complete with the language identifying this check as a "full and final settlement" of all claims, including past-due rents. Upon his negotiating that check, plaintiff accepted those terms. His attempt to alter those conditions by scratching out the language before cashing the check is irrelevant; the act of cashing the check itself comprises acceptance of defendant's offer. See Creative Marketing Sales, Inc. v. Rayborn, 615 So.2d 1107 (La.App. 5 Cir.1993.)
Plaintiff compares his situation to that presented in RTL Corporation v. Manufacturer's Enterprises, Inc., 429 So.2d 855 (La. 1983.) In that case, the party who had received the check with limiting language called the payor and made it clear that this sum would be inadequate to settle the debt. The payor remained silent, and the court later construed his silence to be an acknowledgement of his greater debt. Plaintiff has suggested to this court that his testimony includes a similar conversation between Sapp and Cure, in which Mr. Sapp made it clear that he would be cashing the check for profits only, and did not accept Cure's terms. Cure is supposed to have remained silent on this issue. However, upon careful review of all plaintiff's testimony on the subject, we can find no record of this conversation. Mr. Sapp does not mention this at trial at all, despite repeated questioning about his decision to alter and cash the check. With no such conversation on the record, the decision made in RTL is clearly inapplicable to the present case.
In his third assignment of error, plaintiff asserts that the defendant's unauthorized withdrawals from the partnership funds should have been awarded to plaintiff at trial. Cure did write several checks from the partnership account for personal expenses, such as taxes and health insurance. However, the accounts reveal that Cure always deducted his personal expenses from his share of the partnership profits. Plaintiff has suffered no losses and is therefore due no reimbursement.
Plaintiff also argues, in two assignments of error, that the trial court erred in declining to find a breach of fiduciary duty on the part of the defendant and in failing to award appropriate damages. He complains of the defendant's unauthorized expenditures and failure to disclose important information such as the fact that the defendant had dissolved the partnership.
As discussed earlier, Cure's withdrawals from the partnership account were sometimes for personal expenses. However, as he never shortchanged his partner as a result of these withdrawals, they do not constitute a breach of fiduciary duty.
However, defendant's failure to communicate with his partner in commendam to this degree is not as easily explained. "Partners have a duty to deal fairly and honestly with each other. Each partner must refrain from taking any advantage of other partners by the slightest misrepresentation or concealment of material facts. Full and complete disclosure of all important information is required despite the fact that the relations between the parties have become strained or in conflict." Thibaut v. Thibaut, 607 So.2d 587 (La.App. 1 Cir.1992).
*266 Sapp was undoubtedly entitled to specific notice that Cure was dissolving their partnership. Although Sapp was aware of Cure's intent from several phone calls and conversations, he only learned that his business was closed when he received a rent check from an entirely new company. Cure's behavior in this matter was less than forthright, and falls beneath the standards of candor and honesty the law demands from partners. When Cure failed to inform Sapp of such a basic and important fact, he did breach his fiduciary duty as Sapp's partner.
Having found such a breach, we then must examine the question of damages. Thibaut presents the appropriate method: "the formula for determining damages under La. Civil Code art. 2809 contemplates that the damages sustained by the partnership and/or plaintiff partners are measured in terms of the profits derived by the defendants partners as a result of the breach." Id. at 604.
In the present case, it appears that the defendant has profited from his breach of duty to the plaintiff in only one respect; for the period of time between the time when Cure started operating his own company and the time when Sapp found out about this the defendant was able to profit from his new business while plaintiff was unknowingly cut off from this source of income. As far as plaintiff knew, the space and equipment he was renting out were being used to make money for his own company, not the new oil service operated by defendant. Had he known of defendant's defection, plaintiff could have opted to begin his own sole proprietorship, to use the customer lists, space, and equipment for his own benefit.
We therefore find that Cure owes F & S profits equivalent to those earned in this three month period. We can estimate these profits from those earned by the partnership in commendam that preceded defendant's sole proprietorship. According to the information in the record, in its last years of operation the partnership in commendam was averaging approximately $33,400.00 in profit a year. Defendant's share of such profit would therefore be $16,700.00 per year. Defendant failed to inform plaintiff for a period of three months, or one quarter of a year; accordingly, we find that defendant owes plaintiff $4,175.00, representing the quarter of a year's profits that defendant was able to collect without plaintiff's knowledge.
Plaintiff's final assignment of error challenges the trial court's failure to distribute the assets of the partnership to the plaintiff. However, between trial and judgement, Cure paid the final share of the capital account, $13,124.00, to F & S Enterprises. Plaintiff suggests that he is due additional amounts for interest on the partnership assets; the record indicates that Cure disbursed the funds to himself and F & S at the same time and in equal proportions. No timetable for distribution of the assets was provided; given these facts, plaintiff falls short of proving that any interest is due him.
Accordingly, for the reasons given above, we reverse the trial court judgment on the issue of fiduciary breach, and render judgment in favor of plaintiff F & S Enterprises, awarding $4175.00 in damages. In all other respects the judgment is affirmed. Costs of this appeal to be borne by both parties.
REVERSED IN PART AND AFFIRMED IN PART.
MURRAY, Judge, dissents in part:
Based upon the record presented here, I agree that the trial court properly denied F & S Enterprises' claim for past-due rents, unpaid profits and unauthorized withdrawals through 1992, because the plaintiff failed to prove any errors or inaccuracies in those figures. However, I must disagree with the conclusion that Mr. Cure breached his fiduciary duty only by failing to give notice of his withdrawal from the partnership. While he admitted that Mr. Sapp offered to sell him F & S's interest in the business, Mr. Cure chose not to enter into negotiations with his partner to either effect a buy-out or to resolve their differences. Instead, he merely withdrew from the partnership without notice, set up his own corporation, and, by his own admission, "just continued to do business as usual with [the same customers] but under a different name." Thus, just as in Thibaut v. Thibaut, 607 So.2d 587 (La.App. 1st Cir.1992), writs denied, 612 So.2d 37-38, *267 101 (La.1993), Mr. Cure breached his fiduciary duty to his partner by a unilateral confiscation of the partnership's customers and goodwill.
Because Mr. Cure diverted the partnership's business to his own corporation, $4,175.00 is inadequate to compensate F & S Enterprises for the loss resulting from Mr. Cure's breach of duty. While the majority quotes Thibaut's statement that the appropriate measure of damages is "the profits derived by the defendant partners as a result of the breach," that court did not merely award the aggrieved partners their share of the profits for a period of time. Instead, the Thibaut court interpreted Civil Code article 2809 to require a determination of what the defendants had gained through their wrongful acts:
In this case, the actions and maneuvers undertaken by the defendants in their plans to take over the business of the partnership in their own names to the exclusion of the plaintiff partners caused the demise of the partnership. The defendants essentially obtained an already established, reputable, business enterprise while incurring costs simply to purchase the necessary equipment. We find that the breaching partners gained the value of the existing partnership.... Stated another way, the damages sustained by the plaintiffs equal the value of the existing partnership that the defendant partners obtained at no charge.
607 So.2d at 605. The court then reviewed the valuation testimony of several experts presented at trial and found that "the defendant partners obtained an existing business with a value of $2,840,400 for the purchase price of $1,724,823. Therefore, the actual damage sustained by the partnership is $1,115,577." Since the plaintiff partners had been 50% owners of the partnership, they were awarded one-half of this loss.
In this case, just as in Thibaut, Mr. Cure transferred the partnership's customer base to his own newly formed corporation, without charge. He thus effectuated a "buy-out" of his partner's interest merely by making a post-trial payment of $13,124.00 for F & S's share of cash and inventory. The award of another three months' profits does nothing more than postpone the effective date of the division of tangible assets; the intangible value of the going concern still becomes an asset of Mr. Cure's corporation for which F & S has not been compensated.
I therefore find that F & S Enterprises is due an amount equal to the value of its share in the business as of December 31, 1992, which includes the business' value as a going concern. The only evidence in the record on this point is the testimony of plaintiff's C.P.A., A.P. Boudreaux. The lowest value assigned to the goodwill of this business in his testimony was $189,110.00 based upon capitalized earnings, which is a standard method of calculation of this asset. Mr. Cure neither presented his own expert to rebut Mr. Boudreaux's valuation nor offered any challenge on cross examination which would undermine his methodology or calculations.[1] Instead, counsel for Mr. Cure merely obtained the expert's agreement that if a business is dissolved rather than sold, there is no goodwill to be divided. In this case, however, although Mr. Cure declared the partnership dissolved, and this court speaks in terms of a "dissolution" under the law, the partnership's business was not terminated; by Mr. Cure's own testimony, it continued to operate in the same manner as before. Therefore, F & S is entitled to recover $94,555.00 as his share of the one partnership asset left undivided by Mr. Cure.
Additionally, although the court below recognized in its Reasons for Judgment that "the partnership dissolved as of December 31, 1992," no actual judgment of dissolution was rendered. I would therefore amend the Judgment to include this pronouncement.
NOTES
[1] The defendant asserts that no evidence was offered on this issue because the petition did not specifically seek damages for breach of fiduciary duty. However, a review of paragraphs IV(10) and (11), VII, and XII (4) and (5) of the petition establishes that there was no enlargement of the pleadings.