772 So.2d 891 (2000)
Elise Chance TAYLOR, Plaintiff-Appellee,
v.
Richard David TAYLOR, Defendant-Appellant.
No. 33,959-CA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 2000.
Rehearing Denied November 30, 2000.
*892 S. Lynn Walker, Shreveport, Counsel for Appellant.
William G. Nader, Shreveport, Counsel for Appellee.
Before NORRIS, C.J., and WILLIAMS and CARAWAY, JJ.
NORRIS, Chief Judge.
Former husband asserted a claim of lesion against a voluntary community property *893 settlement which included an obligation of contractual spousal support; the district court rejected this claim and ordered him to comply with the terms of the agreement. Finding the agreement lesionary, we reverse.

Factual Background
On February 7, 1998 Richard and Elise Taylor were married. Approximately eight months later, on October 24, 1998, Elise left the matrimonial domicile; she filed her original petition for divorce on November 4, 1998. On November 12, 1998, the parties signed an "Act of Partition and Community Property Settlement" which, among other things, granted Elise spousal support of $2,000.00 a month for life, and half of any future proceeds from certain oil and gas leases held by Sandstone Exploration, LLC, Richard's company. Although the document was never filed into the divorce suit record, it was filed into the conveyance records of Bienville Parish.
Subsequently, in the first week of December, 1998, Richard announced his intention not to abide by the terms of the agreement, claiming that misrepresentations were made by Elise during negotiations and that the agreement was lesionary. Accordingly, he filed a Petition for Rescission on December 29, 1998; Elise answered and reconvened, claiming that Richard breached the contract and also seeking attorney fees. The parties were ultimately divorced on June 3, 1999, with the former community regime being terminated retroactive to November 4, 1998. Trial on the Petition for Rescission was held on September 23-24, 1999. In a judgment dated October 18, 1999, the district court granted Elise's motion for involuntary dismissal, dismissing Richard's Petition for Rescission and ruling in favor of Elise on her reconventional demand, ordering Richard to comply with the terms of the original agreement and pay accrued spousal support. Attorney fees of $3,000.00 were also awarded to Elise. This appeal followed.

Law and Analysis
On appeal, Richard initially argues that the trial court erred in determining that oil and gas leases[1] belonging to Sandstone Exploration, LLC, a business he owned prior to the marriage, were community property. The district court made this finding despite the uncontroverted evidence adduced at trial that Sandstone was formed in October, 1997, and the parties were married on February 7, 1998; in fact, counsel for Elise stipulated at trial as to the corporation's separate nature. (Record p. 250, ln. 17-20)
Under Louisiana law, property of married persons is generally characterized as either community or separate. La.C.C. art. 2335. The classification of property as separate or community is fixed at the time of its acquisition. Gay v. Gay, 31,974 (La. App.2d Cir. 6/16/99), 741 So.2d 149, 153. It is axiomatic that community property comprises property acquired during the existence of the matrimonial regime. La. C.C. art. 2338. Likewise, separate property is that property acquired prior to the establishment of the community property regime and is the exclusive property of whichever spouse owned it prior to the marriage. La. C.C. art. 2341.
At trial, Richard testified that the leases were acquired in Sandstone's name. His responsibility on behalf of Sandstone was to locate and convince "ground floor" investors to provide funding for a lease block of certain properties to be held by Sandstone. Then, his responsibility on behalf of Sandstone was to locate and sell the *894 oil/gas prospect to other industry investors. As consideration for the sale, Sandstone would receive the profit as well as an overriding royalty from the production achieved from the lease.
Although the district court was presented with the evidence and stipulations of counsel that the leases were the property of Sandstone and that Sandstone was the separate property of Richard, the district court apparently felt that because the leases themselves were executed during the existence of the marriage, they were community property. The court made this finding despite Richard's testimony that no community funds were used in this business enterprise, that the leases were the property of Sandstone, that Sandstone currently had no overriding royalty from the leases, and that Sandstone had not conveyed the interests in those leases to himself or anyone else. As such, since the leases were the incorporeal immovable property of Sandstone, the district court was in error, for under the Civil Code, Mrs. Taylor would not be entitled to one-half of the leases' value, but rather only to reimbursement for one-half of the expenditure of community services in this case, the value of Mr. Taylor's labors-used to enhance his separate property. La. C.C. art. 2366; see also, Brehm v. Brehm, 00-201 (La.App.5th Cir 6/27/00), 762 So.2d 1259 (matrimonial domicile built on husband's separate property did not become community property by use of community funds to construct home and subsequent improvements); Panzico v. Panzico, 30,760 (La.App.2d Cir. 8/19/98), 716 So.2d 505. In fact, during the existence of the marriage, Sandstone lost money. Additionally, the record is devoid of any evidence that Mrs. Taylor pierced the "corporate veil" to show that Sandstone is indistinguishable from Richard or that Richard individually had the right to assign Sandstone's holdings. Based on the record before us, the district court was clearly wrong in concluding that the leases executed by Sandstone were community property; this assignment has merit.[2]
Richard's third assignment of error contends that the district court erred in dismissing his petition for rescission based on lesion. We agree.
An extrajudicial partition may be rescinded on account of lesion if the value of the part received by a co-owner is less by more than one-fourth of the fair market value of the portion he should have received. La.C.C. art. 814. Lesion cannot be waived. Harmon v. Harmon, 508 So.2d 616, 620-21 (La.App. 2d Cir.), writ denied, 513 So.2d 1210 (La.1987); Picard v. Picard, 97-1258 (La.App. 3d Cir. 4/1/98), 708 So.2d 1292, 1295.
The proper method of establishing lesion beyond one-fourth is twofold: (1) the community property's true value (net value) must be ascertained; and (2) it must then be determined from the property acquired whether a party received value less than ¾ of ½ share of the true value of the property partitioned. McCarroll v. McCarroll, 96-2700 (La.10/21/97), 701 So.2d 1280, 1285; Cowling v. Cowling, 486 So.2d 1060 (La.App. 2d Cir.1986); La. C.C. art. 2590; La. C.C. art. 814 comment (b). The party claiming this remedy has the burden of proving lesion beyond one-fourth and must establish the claim by clear and convincing evidence. King v. King, 493 So.2d 679, 681 (La.App. 2d Cir. 1986); Ozane v. Ozane, 392 So.2d 774, 777 (La.App. 3d Cir.1980).
From the record, we note that the community had a gross value of $46,380.51 and a net value of $40,542.68. According to the agreement, $ 42, 452.13 of the community assets were conveyed to Elise and *895 $3,928.38 to Richard, with Richard assuming the $5,837.83 in outstanding community debts. As such, even disregarding the oil and gas leases, the agreement is lesionary, for Richard should have, at a minimum, received $15,203.51 of the community's value. In addition, Richard also agreed to pay the community's 1998 state and federal tax liability, to maintain a $100,000.00 life insurance policy on himself but payable to Elise, to pay Elise's health insurance policy until she was covered by another policy, to contribute $2,000.00 yearly into Elise's I.R.A. account for 11 years, and to pay $2,000.000 per month contractual alimony, "regardless of remarriage, until his or her death, whichever comes first."[3]
In brief, Elise contends that the agreement is not lesionary[4] because it is in reality a "transaction and compromise" from which Richard has reduced his potential exposure to future alimony payments and litigation, and that parties are free to contract accordingly. This argument has no merit, for even if a partition has the qualities of a transaction and comprise, it may nevertheless be attacked for lesion. Harmon, supra.
While it is true that the value of a provision in a community property settlement which reduces a future obligation or exposure can be added as consideration to the value of other assets received for the purpose of considering whether the agreement is lesionary, see, e.g., King v. King, 493 So.2d 679, 682 (La.App. 2d Cir.1986), we fail to see the value in the present case and Elise has provided no evidence to controvert Richard's strong showing that he did not receive his legally-mandated minimum share of the community. Cowling v. Cowling, 486 So.2d 1060 (La.App. 2d Cir.1986); see also, Ozane v. Ozane, 392 So.2d 774, 777 (La.App. 3d Cir.1980) (unsupported or speculative values are not to be included in lesion calculations). In fact, under the present agreement, Richard received nothing and actually incurred a substantial liability by assuming the community's debts and 1998 tax debt; any value associated with avoiding future spousal support adjustments would therefore have to be substantial, but Elise made no showing in this regard other than her speculation that the present settlement might reduce Richard's future spousal support obligation. Moreover, in the present agreement, Richard waived his statutory future right to reduce, terminate, or contest for fault his spousal support obligation-tangible benefits accruing in favor of Elisewhich, at a minimum, offsets the purely speculative benefit gained by locking his spousal support payments in a particular level. Accordingly, based on the record before us, we conclude that the agreement was a partition subject to lesion and should be rescinded.[5]

Contractual Alimony
Having concluded that the property partition is lesionary and therefore null, we turn to Elise's contention that the contractual spousal support portion of the agreement should nevertheless be enforced. Initially, we note that there is no "severability" clause in the agreement which would separate this section from the *896 remainder, which is lesionary. Moreover, since spousal support, when made the subject of a contract and included as a part of a partition agreement, can be viewed as consideration for property received in the partition, such an agreement cannot be viewed piecemeal. King, supra at 682; Nelson v. Walker, 250 La. 545, 197 So.2d 619 (1967). By the agreement's own terms, it is a unified whole, for it contemplated a set-off from Richard's spousal support obligation for amounts Elise may receive from certain future oil and gas leases. Furthermore, he waived rights, such as the right to terminate or adjust the spousal support, that are, at the very least, as valuable as those she gave up. As such, it would be fundamentally unfair to Richard to enforce one term of an agreement which may have not been granted had he known the remainder would fail. Therefore, we find the spousal support section is not severable from the main agreement which is lesionary and the entire agreement is void.
In addition, even if the spousal support could be severed from the property partition, given this set of facts, we would have grave doubts as to its enforce-ability on public policy grounds. Spousal support can be made the subject of a contract and may be included as part of a community property partition agreement, see, e.g., King, supra; however, such contracts may not produce a result "prohibited by law or public policy." La.C.C. art. 1968.
Generally, final, periodic spousal support may be awarded to a party who is: (1) free from fault, (2) based upon the needs of that party, and (3) the ability of the other party to pay. La.C.C. art. 111. Factors in determining the amount of the award may include: (1) the needs of the party; (2) the income and means of the party, including the liquidity of such means; (3) the financial obligations of the party; (4) the earning capacity of the parties; (5) the effect of custody of children upon a party's earning capacity; (6) the time necessary for the claimant to acquire appropriate education, training, or employment; (7) the health and age of the parties; (8) the duration of the marriage; (9) and the tax consequences to either or both parties. La.C.C. art. 112. An "award of periodic support may be modified if the circumstances of either party change, and shall be terminated if it has become unnecessary." La.C.C. art. 114. The obligation of spousal support is extinguished by the remarriage of the obligee or a judicial determination that the obligee has cohabited with another person of either sex in the manner of married persons. La.C.C. art. 115.
In the present case, however, Richard has, in essence, waived these protections of the Civil Code and the public policy implicit in them, and obligated himself to pay periodic spousal support for Elise's lifetime, even if she remarries, and regardless of fault or future circumstances. Although not briefed by the parties, we find this type of agreement could arguably be violative of public policy, and therefore void, particularly because this is an extra-judicial agreement where one party obligates himself to a blatantly one-sided obligation for life, without any recourse or consideration given. Moreover, since married persons owe each other "fidelity, support, and assistance," La. C.C. art. 98, such an agreement derogates from this public policy as expressed in the Civil Code, for it actually encourages the parties to continue onward to a divorce rather than seek reconciliation. See also, Favrot v. Barnes, 332 So.2d 873 (La.App. 4th Cir.1976), writ denied, 334 So.2d 436 (La.1976), reversed in part on other grounds, 339 So.2d 843 (La.1976), cert. denied, 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 329 (1976)(this duty cannot be derogated by contract). Accordingly, although factually distinguishable because it was entered post-separation, we nevertheless find that the instant agreement encourages adulterous behavior and/or discourages reconciliation in much the same manner as the post-nuptial agreement to provide permanent spousal *897 support regardless of a determination of fault, need, or ability to pay which was invalidated as against public policy in Boudreaux v. Boudreaux, 98-791 (La.App. 3d Cir. 6/2/99), 745 So.2d 61; see also, Williams v. Williams, 99-1101 (La App.3d Cir. 4/12/00), 760 So.2d 469 (invalidating, on public policy grounds, matrimonial agreement to pay permanent spousal support regardless of fault, need, or ability to pay). In addition, we would have grave doubts as to the enforceability of an agreement intended, as Richard testifiedto reduce Elise's "dependence on other men," which seeks to control and limit her future behavior and right to remarry after divorce.

Decree
For the foregoing reasons, we reverse the judgment of the lower court. The November 12, 1998 "Act of Partition and Community Property Settlement" executed by Richard and Elise Taylor was lesionary. The portion of the agreement pertaining to spousal support is not severable from the remainder of the agreement, and is likewise null. We therefore grant David Taylor's petition and rescind the November 12, 1998 settlement. Costs are assessed to Elise Chance Taylor.
REVERSED.

APPLICATION FOR REHEARING
Before NORRIS, C.J., and WILLIAMS, CARAWAY, KOSTELKA, and DREW, JJ.
Rehearing denied.
NOTES
[1] The agreement provided that Elise would receive 50% of Richard's net profit of the proceeds of the "Woodwardville Prospect," an oil and gas exploration project located in Bienville Parish, as well as 50% of Richard's overriding royalty interest, plus $30,000.00. Richard also agreed to assign to Elise 50% of his overriding royalty on "his next and/or second prospect in which he receives overriding royalty interest, regardless of when this may occur."
[2] Finding that the leases were indeed not community property and in light of our further findings below, we pretermit discussion of Richard's second assignment of error-that the district court erred by failing to find that inclusion of the lease prospects was in fact a donation inter vivos of future property, and therefore a legal nullity.
[3] We do not include the monetary value of the contractual alimony in our lesion calculation, for it is not part of the community property. See, Oberfell v. Oberfell, 516 So.2d 424 (La. App. 1st Cir.1987); Jones v. Jones, 459 So.2d 1200 (La.App. 5th Cir.1984), writ denied, 462 So.2d 649 (La.1985). Under King, supra, the value of any waivers may be added, if not speculative.
[4] At oral argument, counsel for Elise conceded that the property partition was lesionary.
[5] In light of our conclusions above, we pretermit any discussion of Richard's remaining assignments of error: that the trial court erred by failing to find that the agreement was subject to rescission due to the vice of consent of fraud; that the trial court erred by making a settlement proposal to the parties; and that the district court erred in awarding attorney fees to Elise.