796 So.2d 57 (2001)
Sandra Rhoda Chernick AUFRICHTIG, Plaintiff-Appellee,
v.
Robert AUFRICHTIG, Defendant-Appellant.
No. 34,909-CA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 2001.
*59 Love, Rigby, Dehan & McDaniel by Hani E. Dehan, Shreveport, Counsel for Appellant.
Sockrider, Bolin, Anglin, Batte & Bowers By Gregory H. Batte, H.F. Sockrider, Jr., Shreveport, Counsel for Appellee.
Before GASKINS, PEATROSS and KOSTELKA, JJ.
KOSTELKA, J.
Robert Aufrichtig ("Robert") appeals the judgment in favor of Sandra Aufrichtig ("Sandra") which assessed him with arrearages and attorney fees and upheld his obligation to provide a policy of hospitalization and major medical insurance to Sandra. We reverse and amend in part and, as amended, affirm.

FACTS
Robert and Sandra entered into a consent judgment of divorce on July 3, 1990. Incorporated into the judgment were the parties' stipulation to mutual fault and agreement that Robert would pay Sandra $300 per week in nonmodifiable contractual alimony for 520 weeks, terminable only upon the death of either party or Sandra's remarriage or open concubinage.[1] The judgment also provided that Robert would provide health insurance for Sandra until her remarriage and make payments of $350 per week for 520 weeks representing an equalizing payment regarding the community property settlement.
On October 18, 1996, Robert sought to terminate the contractual alimony obligation on the grounds of Sandra's open concubinage. On January 24, 1997, the parties again entered into a consent judgment in which Robert agreed to pay Sandra $100 per week in contractual alimony for a period of 172 weeks terminable only upon the death of either party.[2] The judgment further ordered that all other provisions *60 of the July 3, 1990 judgment were to continue "in full force and effect."
On May 31, 2000, Sandra instituted a rule to accrue past due sums pursuant to the January 24, 1997 judgment, contempt and attorney fees. Therein, she alleged that Robert remained in arrears for a total sum of $5,850, representing $1,300 in alimony and $4,550 in equalizing payments. She also alleged that Robert had ceased providing her medical insurance in May, 2000 in violation of the July 3, 1990 agreement. However, on April 26, 2000, and May 1, 2000, Robert had forwarded Sandra the total sum of $3,711 which represented the full arrearage amount less $2,139, for which he claimed Sandra owed him reimbursement. Accordingly, at the time of trial, the only contested issues were the $2,139 claimed reimbursement and Robert's obligation to continue providing medical insurance after May, 2000, contempt and attorney fees.
After considering the evidence offered, the trial court declined to hold Robert in contempt of court but assessed him with $1,864 in arrearages and attorney fees and ordered that he maintain health insurance on behalf of Sandra pursuant to the July 3, 1990 judgment. This appeal ensued.[3]

DISCUSSION

Contra Bonos Mores
On appeal, Robert first argues that his agreement to pay $100 per month in alimony for 172 weeks, terminable only upon death of either party, and to maintain health insurance on Sandra until her remarriage violates public policy and is therefore absolutely null.[4] Robert concedes that he failed to raise this issue at the trial court level. Of course, the general rule is that an appellant is precluded from raising for the first time on appeal an issue which was not raised in the trial court. However, because La. C.C. art. 2030 provides that an absolute nullity may be declared by the court on its own initiative, we find it appropriate to address the issue on appeal.
A contract is absolutely null when it violates a rule of public order, as when the object of the contract is illicit or immoral. A contract that is absolutely null may not be confirmed. La. C.C. art. 2030. Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity. La. C.C. art. 7.
The gist of Robert's argument is that it is against public policy for parties to agree to post-divorce alimony regardless of fault, need, ability to pay or open concubinage. In support of his position, he cites the cases of Boudreaux v. Boudreaux, 98-791 (La.App. 3d Cir.06/02/99), 745 So.2d 61, writ denied, 99-1935 (La.10/29/99), 748 So.2d 1165 and Williams v. Williams, 99-1101 (La.App. 3d Cir.04/12/00), 760 So.2d 469, writ denied, XXXX-XXXX (La.10/27/00), 772 So.2d 123. Because of the clear factual distinctions between those cases and the present matter, however, we find them unpersuasive in resolving this issue. In the present matter, the agreements were confected in anticipation of or after the dissolution of the marriage and therefore concern contractual alimony and consent decrees which occurred after the parties *61 had separated or divorced. Both Williams and Boudreaux clearly distinguished a contractual alimony agreement from the facts involved therein, i.e., the legality of post-nuptial or matrimonial agreements confected during the marriage which included generally unconditional provisions for spousal support in the event of divorce. It was the "attempts to affect the parties marital and familial duties during the marriage" which the court determined undermined the sanctity of marriage and encouraged adulterous conduct for a price, thereby violating the marital duties of fidelity, support and assistance.
Notably, both decisions recognized as a valid contract a promise to pay alimony confected during the pendency of a divorce action which ends the marriage. Boudreaux, 745 So.2d at 63; Williams, 760 So.2d at 474. In light of this acknowledgment and because such is the type of agreement in which Sandra and Robert have entered, we conclude it inappropriate to extend the holdings of this jurisprudence to the present facts. Moreover, we cannot find that the policy considerations inherent in the facts of Boudreaux and Williams exist here. With the marriage irretrievably and irreparably broken at the time of the alimony agreements, so were the marital duties of fidelity, support and assistance. Accordingly, Robert's reliance on these holdings is misplaced.
Robert also cites the case of Taylor v. Taylor, 33,959 (La.App.2d Cir.11/01/00), 772 So.2d 891 in support of his argument. Likewise, we find Taylor inapposite to a resolution of this matter. In Taylor, the parties signed a community property settlement during divorce proceedings, which among other things granted the wife spousal support of $2,000 per month for life. On appeal, this court rescinded the entire agreement as lesionary, including the spousal support provision which formed part of the unified whole of the agreement and could not be severed from the main agreement. In dicta, the court expressed "grave doubts" as to the enforceability of the support agreement on public policy grounds because the husband obligated himself for life without any consideration given and because the agreement actually encouraged the parties to divorce and encouraged adulterous behavior. The court suggested extending Boudreaux, supra to an agreement entered into during divorce proceedings but seven months prior to the divorce. It is upon this language that Robert relies in support of his argument. Of course, we are not bound by the court's observation which has no force of adjudication. Moreover, we find Taylor clearly distinguishable from the facts of this case on two grounds. In this case, the alimony payments were for a set term. For that reason, and because Robert has here obligated himself for payment of insurance only until the remarriage of Sandra, the present obligation cannot be classified as "a blatantly one-sided obligation for life, without any recourse or consideration given...." Taylor, 772 So.2d at 896. Additionally, as discussed above, because in this case the parties entered into the agreement as part of and after the final divorce judgment, the issues of reconciliation and fidelity were at that point irrelevant. For these reasons, we decline to find Taylor persuasive in the resolution of this issue.
Moreover, we find the subject agreement valid and enforceable. It has long been held that alimony after divorce can be made the subject of a contract. Dubin v. Dubin, 25,996 (La.App.2d Cir.08/17/94), 641 So.2d 1036; Wagner v. Wagner, 535 So.2d 1269 (La.App. 3d Cir. 1988), writ denied, 538 So.2d 592 (La. 1989); Bonck v. Bonck, 500 So.2d 798 (La. App. 1st Cir.1986), writ denied, 501 So.2d *62 774 (La.1987); Klein v. Klein, 485 So.2d 970 (La.App. 5th Cir.1986), writ denied, 489 So.2d 921 (La.1986); Spencer v. Spencer, 472 So.2d 302 (La.App. 3d Cir.1985); Jones v. Jones, 459 So.2d 1200 (La.App. 5th Cir.1984), writ denied, 462 So.2d 649 (La.1985); Cunningham v. Cunningham, 448 So.2d 910 (La.App. 3d Cir.1984); Beringer v. Beringer, 415 So.2d 429 (La.App. 1st Cir.1982). Such agreements are enforceable according to their own terms or the proven intent of the parties. Slocum v. Slocum, 97-1569 (La.App. 3d Cir.04/08/98), 712 So.2d 930; Romero v. Romero, 509 So.2d 681 (La.App. 3d Cir. 1987), writ denied, 512 So.2d 427 (La. 1987). These types of agreements have been described as "a bargained-for arrangement advantageous to both parties...." Spencer, 472 So.2d at 307; Jones, 459 So.2d at 1204. These contracts have also been classified as valid transactions or compromise in which the parties adjust their differences by mutual consent through a trade-off or bargaining away of rights. Wagner, supra.
In the present matter, Robert bargained away his right to litigate fault, need, ability to pay and the cessation of alimony due to open concubinage in exchange for the right to nonmodifiable alimony for a set period. Likewise, Sandra compromised her rights to receive higher monthly sums in exchange for a nonmodifiable set monthly sum. Additionally, despite Robert's argument, the agreement to pay post-divorce alimony until remarriage regardless of need has been held to be a valid and enforceable contract. King v. King, 390 So.2d 250 (La.App. 3d Cir.1980), writ denied, 396 So.2d 884 (La.1981); Beringer, supra. So, too, agreements which specify cessation of alimony only upon remarriage have been held not to violate public policy despite the fact that the payee spouse has entered into open concubinage. Becker v. Becker, 94-1224 (La.App. 5th Cir.05/05/95), 654 So.2d 1365, writ denied, 95-1719 (La.10/13/95), 661 So.2d 498; Romero, supra. Likewise, an agreement for post-divorce alimony has been found enforceable despite the parties' fault. Klein, supra; Beringer, supra. For these reasons, we reject Robert's argument that either the July 3, 1990 or January 24, 1997 judgments violate public policy[5] and therefore uphold the agreements as valid and enforceable.

Imputation of Payments
Robert secondly contends that the trial court erroneously imputed the payments made by him and therefore erred in awarding attorney fees. As noted above, Robert forwarded two checks to Sandra in the amounts of $3,261 and $450 on April 26, 2000 and May 1, 2000, respectively, representing the total amount he owed to Sandra in delinquent alimony and equalizing payments, less the contested $2,139. Robert admitted he made no imputation of the debt. Pursuant to La. R.S. 9:375, the trial court awarded $1,000 attorney fees, obviously finding Robert was delinquent at least in part in his alimony obligation.
Robert argues that because his alimony obligation is the most burdensome, due to the potential penalties for nonpayment, including contempt, jail or a fine, the payments must first be imputed to his alimony obligation. If first imputed to his alimony, Robert claims to have fulfilled his total alimony obligation of $1,300 and to, therefore, *63 not be subject to attorney fees. We agree.
Regarding the imputation of debts, La. C.C. art. 1868 provides in pertinent part that if an obligor has the same interest in paying all debts, payment must be imputed to the debt that became due first. Citing Leach v. Leach, 238 So.2d 26 (La.App. 1st Cir.1970), La. C.C. art. 1868 Revision Comment (c) interprets this paragraph as requiring payment imputed to a debt other than the one which first fell due when the obligor does not have the same interest in paying all his debts, such as when nonpayment of the last that fell due may expose him to contempt of court. La. C.C. art. 1868 generally reproduced the substance of La. C.C. art. 2166 under which Leach, supra, was decided and did not change the law. La. C.C. art. 1868 Revision Comment (a).[6]
In this case, it was only Robert's delinquent payment of alimony which subjected him to contempt of court and possible jail exposure; his untimely equalization payments exposed him to no such penalty. Accordingly, Leach, supra, directs that under these circumstances Robert had the most interest in paying his alimony. Therefore, he correctly contends that his April 26, 2000, and May 1, 2000 payments should have first been imputed to his alimony obligation. Because these sums would have been adequate to totally fulfill his alimony obligation, the award of attorney fees pursuant to La. R.S. 9:375 was in error. We, therefore, reverse that portion of the trial court judgment.

Medical Insurance
The record shows that Robert continued to pay for Sandra's medical insurance until May, 2000. Nevertheless, he argues that the January 24, 1997 agreement terminated his obligation to pay medical and health insurance premiums by substituting a new contractual alimony obligation of $100 per week for 172 weeks.[7] We cannot agree. The trial court determined that the terms of the January 24, 1997 contract clearly did not modify the insurance provision of the July 3, 1990 judgment and that the provision was nonmodifiable until the death or remarriage of Sandra.
A stipulation entered into by and between parties to a lawsuit and later incorporated into a consent judgment in the lawsuit is a transaction or compromise between the parties for the purpose of preventing or putting an end to the lawsuit in the manner in which they agree. La. C.C. art. 3071; Czech v. Earley, 573 So.2d 252 (La.App. 3d Cir.1990). A consent judgment is in effect a bilateral contract by which the parties adjust their differences by mutual consentan essential element of every contract. Id. La. C.C. art. 2046 provides that when the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. Whether a contract is ambiguous is a question of law. Hampton v. Hampton, 97-1779 (La.App. 1st Cir.06/29/98), 713 So.2d 1185.
*64 In separate paragraphs, the July, 3, 1990 agreement provided that Robert pay contractual nonmodifiable alimony of $300 per week for a period of ten years, terminable only upon the end of the period, the death of either party, remarriage of Sandra or her living in open concubinage. The next paragraph of the agreement ordered Robert to pay for health insurance until Sandra's remarriage.
The January 24, 1997 judgment provided that the contractual alimony set forth in the July 3, 1990 judgment be terminated and ordered Robert to instead pay contractual alimony of $100 per week for a period of 172 weeks. The judgment continued in full force and effect "all other provisions" of the July 3, 1990 judgment.
We find that under the clear and unambiguous terms of the July 3, 1990 consent decree, the parties intended to exclude from the definition of "contractual alimony" the health insurance premiums. This intent is clear, not only from the placement of the health insurance provisions in a separate paragraph of the agreement which does not refer to contractual alimony, but also from the different restrictions placed upon the termination of each obligation, i.e., termination of health insurance upon Sandra's remarriage only as opposed to death, remarriage or open concubinage in the case of contractual alimony. Accordingly, it follows that when the January 24, 1997 agreement terminated the contractual alimony provision of the July 3, 1990 judgment, the parties did not intend to modify or terminate the health insurance premiums but rather continued in full effect that provision of the earlier judgment. Accordingly, under the clear import of the agreements, Robert is bound to pay the health insurance premiums until Sandra's remarriage. The trial court committed no legal error in so concluding.

Reimbursement Claim
In his final argument, Robert claims the trial court erred in not allowing him to offset or assert as a defense amounts he paid on behalf of Sandra resulting from an accident in which she was involved prior to the separation of the community. The facts show that on December 9, 1988, Sandra was involved in a slip and fall incident. As a result, she required medical treatment and incurred bills which Robert assisted her in paying prior to the termination of the community but during the parties' separation. In his April 26, 2000 arrearage payment to Sandra, Robert deducted the sum of $2,139 seeking unilaterally to be reimbursed for the money he had expended. The trial court rejected his claim to reimbursement, with the exception of $550 which Robert showed to have been paid after termination of the community. Finding this sum to be a community debt paid out of Robert's separate funds, the trial court reimbursed Robert for $275 in accordance with La. C.C. art. 2365. Nevertheless, as discussed hereinafter, our partial sustaining of Robert's exception of res judicata relating specifically to Sandra's effectual compromise of this portion of the claimed reimbursement not only moots the issue of its classification but also the trial court's determination regarding Robert's entitlement to it. See infra note 8.
The remaining reimbursement claims of $1,589 were rejected based upon the clear intent of the parties in the community property agreement. The court determined that because the parties had not included these claims in the community property agreement, they had been released by the terms of the agreement. We find no error in this determination. The clear terms of the agreement "fully acquit, release, discharge and relieve" the parties from any other "claims whatsoever *65 of any nature or kind" against the former community. It is undisputed that the rejected reimbursement debts were incurred and paid prior to the termination of the community. As such, these claims could have been included in the community settlement agreement. Because they were not, by the clear wording of the agreement, these claims were released. Accordingly, Robert has no legal claim to their reimbursement. Under these circumstances, La. C.C.P. art. 424 gives Robert no authority to assert a cause for these claims as a defense to Sandra's suit.

Res Judicata
In a Peremptory Exception of Res Judicata filed with this court on March 9, 2001, Robert argued that Sandra's negotiation of both the April 26, 2000 and May 1, 2000 checks upon which Robert had written "final payment" compromised the issue concerning the contested $2,139 and precluded her from seeking that amount in her suit for arrearages. A panel of this court referred the exception to the merits of the appeal.
A valid compromise can form the basis of a plea of res judicata because a compromise has the legal efficacy of a judgment. Brown v. Drillers, 93-1019 (La.01/14/94), 630 So.2d 741. So, too, can the defense of accord and satisfaction form the basis of a res judicata exception. Harrington v. Aetna Life and Cas. Co., 441 So.2d 1255 (La.App. 1st Cir.1983). The doctrine of accord and satisfaction is much like the doctrine of compromise. Martin v. Elmwood Medical Center, 97-826 (La. App. 5th Cir.01/27/98), 707 So.2d 1287; Orgeron v. Security Industrial Funeral Homes, Inc., 96-2127 (La.App. 4th Cir.02/26/97), 690 So.2d 243. The purpose of compromise is to put an end to litigation. Martin, supra. The doctrine of accord and satisfaction is incorporated into Louisiana jurisprudence and is an affirmative defense which is proven when there is an unliquidated or disputed claim between the debtor and creditor, a tender by the debtor for less than the sum claimed and acceptance of the tender by negotiation of the check. Anesthesia East, Inc. v. Bares, 594 So.2d 1085 (La.App. 4th Cir.1992).
We find partial merit to Robert's exception. Initially, we determine that the $1,589 reimbursement claims, which we have held were released by the property settlement agreement, cannot be the subject of a valid compromise. As discussed above, because that portion of the contested debt was released by the July 3, 1990 community property settlement, the claims had been extinguished or liquidated and could not, therefore, be validly disputed or compromised after that date. Accordingly, the defense of accord and satisfaction is of no avail to Robert on this portion of the claim.
However, we agree that Sandra has effectually compromised the remainder of the claimed reimbursement. As noted above, Robert testified that he paid $550 of Sandra's medical expenses after the parties signed the property settlement agreement. Because the language of the property settlement agreement contemplated the release of only existing claims, we conclude that it did not extinguish this portion of the claimed reimbursement because it did not yet exist. Under these circumstances, the $550 remained unliquidated and validly disputed at the time of Robert's April and May, 2000 payments. Likewise, the remaining elements of accord and satisfaction have been satisfied. At trial, Sandra admitted she was aware that in withholding the $2139, Robert was seeking reimbursement for the medical payments he made on her behalf. Although Sandra phoned Robert to contest the withholding, he failed to *66 concede and continued to assert his entitlement to the money. Cf. RTL Corp. v. Manufacturer's Enterprises, Inc., 429 So.2d 855 (La.1983), in which the court found that the silence of the debtor in a phone conversation with the creditor implied his assent to the creditor's proposal. Under these circumstances, we find Sandra was fully apprised of the nature of the disputed claims, a necessary element of compromise. Harmon v. Simon, 624 So.2d 981 (La.App. 3d Cir.1993); Harrington, supra. Moreover, we find the written notations ("final payment") on the checks were adequate to fully inform Sandra that if the payment was accepted, the claim would have been deemed paid in full, a second necessary element of a valid compromise. Anesthesia East, Inc., supra. Finally, Sandra's negotiation of the checks amounted to her acceptance of Robert's offer to deduct $550 from his back-due alimony and equalization payments. Her attempt to alter the conditions by scratching out the final payment notations and replacing them with "not final payment" is irrelevant and ineffective to alter the terms or invalidate Sandra's acceptance of Robert's offer. F & S Enterprises, Inc. v. Cure, 96-0729 (La.App. 4th Cir.03/12/97), 690 So.2d 263; Harrington, supra. Under these circumstances, we find that Sandra has accepted Robert's offer to compromise by negotiating the disputed $550 with informed consent.[8] Accordingly, we partially grant Robert's exception of res judicata and amend paragraph three of the judgment to deduct an additional sum of $275 (i.e., thereby allowing the entire $550 deduction) and instead assess Robert with the sum of one thousand five hundred eighty-nine ($1,589.00) dollars, together with interest thereon from the date of judicial demand.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed in part to delete the award of $1,000 in attorney fees. The judgment is amended to reduce the arrearage award to the sum of $1,589. In all other respects, the judgment is affirmed. Costs of this appeal are assessed equally to the parties.[9]
REVERSED AND AMENDED IN PART AND, AS AMENDED, AFFIRMED.
NOTES
[1] The agreement was entered into pursuant to La. C.C. art. 160, the then effective alimony law.
[2] At the time of this agreement, La. C.C. art. 160 had been redesignated La. C.C. art. 112.
[3] Robert also filed a Peremptory Exception of Res Judicata with this court which has been referred to the merits and will be addressed in this opinion.
[4] In oral argument, Robert's counsel admitted that the only relief requested is the cessation of his obligation to pay the medical insurance; he desires no reimbursement for alimony or medical premiums he has expended.
[5] Worthy of note also is the recent supreme court pronouncement in McAlpine v. McAlpine, 94-1594 (La.09/05/96), 679 So.2d 85. The court upheld an antenuptial waiver of alimony, declining specifically to invalidate the agreement based upon public policy grounds, after concluding that permanent alimony was not a law enacted for the public interest, but rather to protect individuals.
[6] The corresponding paragraph of La. C.C. art. 2166 provided that "[w]hen the receipt bears no imputation, the payment must be imputed to the debt, which the debtor had at the time most interest in discharging, of those that are equally due...."
[7] At trial, Robert explained that even though he believed that the January 24, 1997 judgment terminated his obligation to provide medical insurance, he continued to pay until May, 2000 under the assumption that even if that were not the case, his obligation ceased as of May, 2000 under the alimony provisions of the original agreement.
[8] And, of course, in compromising the $550, Sandra agreed to Robert's offer that she be responsible for the entire $550 regardless of its potential status as a community debt. Therefore, this court's subsequent determination that the debt had been compromised moots the trial court's ultimate determination regarding both the classification and division of the debt.
[9] In light of our ultimate conclusion, it is unnecessary that we address either party's prescription arguments.